Blatchford *v.* Conover.

SAMUEL BLATCHFORD et al., appellants,

*v.*

WILLIAM W. CONOVER, respondent.

40  205
65L 189
f65L 220
65L 351
65L 353
40  205
68L 564

1. The lien of the writ of attachment upon the defendant's lands as of the time the writ was issued, can be enforced only by a sale and conveyance made by the auditor upon the judgment in the attachment suit, in virtue of a special order of the court for that purpose.

2. Where the defendant in attachment appears to the suit of any applying creditor, the court having obtained by such appearance jurisdiction of the defendant's person, a judgment recovered by such creditor, besides being an ascertainment of the amount due him on his claim presented under the attachment, will also have the quality of a judgment *in personam* at common law, upon which an execution may be issued, and a levy be made on the defendant's property; but a purchaser at a sheriff's sale under such execution will take only the title the defendant had in the lands at the time the judgment was entered, subject to prior liens and encumbrances. If such creditor desires to avail himself of the title the defendant had when the writ of attachment issued, he must have his debt, as ascertained by his judgment, embraced in the judgment in the attachment suit, whereon a sale and conveyance may be made by the auditor, which, by the statute, shall convey the estate the defendant had at the time the writ of attachment was issued.

3. The judgment being the foundation of title to lands by sheriff's sale, the statute determines the actual entry of the judgment as the commencement of the lien, and title under such a sale cannot be antedated by a direction in the execution that the sheriff shall sell and transfer a title as of a day prior to the time the judgment took effect.

4. Where a bill is filed under the act to compel the determination of claims to real estate and to quiet the title to the same (*Rev. p. 1189*), the decree in the suit must fix and settle the rights of the parties. If the defendant's title be found to be superior to that of the complainant, he is entitled to a decree in his favor to that effect.

On appeal from a decree of the chancellor, whose opinion is reported in *Conover* v. *Beckett, 11 Stew. Eq. 384.*

*Messrs. .Cortlandt & R. Wayne Parker,* for appellants.

I. Conover's deed conveyed only the title held at the levy under execution in 1874.

Blatchford v. Conover.

The execution and sale were under the judgments and not under the attachment.

They were several and successive, for separate plaintiffs, against goods and lands *generally*, commanded levy and sale, and that by the sheriff, under general judgment of recovery of moneys.

Sale under attachment would have been by an auditor, under an *order* of court, for the equal benefit of all creditors, of the property only which had been attached under the writ of attachment or the proceedings therein.

In the attachment suit, the plaintiffs, under the lien of the attachment, had the right to such order of sale if the attachment was valid, or they had the right to general judgment and execution. But they cannot claim that execution sale under the statute conveys the attachment title.

II. The attachment was no lien on the property which was held by Joseph Lloyd as naked trustee. The attachment does not take any right but what the defendant possesses, and is unlike a judgment that binds whatever title he appears to have by the record. So held as to an unrecorded deed. *Garwood* v. *Garwood, 4 Hal. 196.* So as to an unrecorded mortgage. *Campion* v. *Kille, 1 McCart. 233 ; 2 McCart. 473 ; De Peyster* v. *Gould, 2 Gr. Ch. 474.*

The trust is established by the evidence of Joseph Lloyd and the answer of Isaac S. Lloyd, deceased. *Johnson* v. *Dougherty, 3 C. E. Gr. 406.*

III. No right is set up against Mr. Isaac S. Loyd or the mortgages held by him at the time of the attachment as muniments of his title, and the decree that these be canceled is without possible support.

*Mr. F. P. McDermott* and *Mr. Charles Haight,* for respondent.

I. The writ of attachment was properly issued against Joseph Lloyd, and the proceedings, judgment and sale were regular and in due form, and strictly in accordance with the statute. *Weber*

v. *Weitling, 3 C. E. Gr. 443; Perrine* ads. *Evans, 6 Vr. 321; Stout* v. *Leonard, 8 Vr. 492; Haggart* v. *Morgan, 1 Seld. 422; Drake on Attachment § 65; Waples on Attachment 36, 393, 506, 507, 508; Hoppock* v. *Ramsey, 1 Stew. Eq. 419; Drake on Attachment § 239; Carter* v. *Champion, 8 Conn. 559; Scarborough* v. *Malone, 67 Ala. 570; Avery* v. *Stephens, 48 Mich. 246; Huxley* v. *Harrold, 62 Mo. 521; Hill* v. *Baker, 32 Iowa 302; Martin* v. *Dryden, 6 Ill. 187; Porter* v. *Pico, 55 Cal. 165; Schenck* v. *Griffin, 9 Vr. 467, 470; Rev. p. 51 § 53; Rev. p. 1043 § 7; Rev. p. 55 § 75; Smith* v. *Warden, 6 Vr. 349; Thompson* v. *Eastburn, 1 Harr. 100; Stout* v. *Leonard, 8 Vr. 496; Reeves* v. *Cooper, 1 Beas. 223; 2 Smith's Lead. Cas. (6th Am. ed.) 660; Hall* v. *Williams, 6 Pick. 241.*

II. Joseph Lloyd was the absolute owner of the premises in question. *Perry on Trusts §§ 126, 143, 147, 152, 164; Hill on Trustees 91, 97, 103; Story's Eq. Jur. § 1202; Howell* v. *Howell, 2 McCart. 75; Wheeler* v. *Kirtland, 8 C. E. Gr. 13; Pomeroy's Eq. Jur. §§ 1039, 1041; Bispham's Prin. Eq. §§ 83, 84; Lewin on Trusts 131; Tunnard* v. *Littell, 8 C. E. Gr. 264; Buchanan* v. *Streeper, 11 W. N. C. (Pa.) 434; Dyer* v. *Dyer, 1 W. & T. Lead. Cas. Eq. (4th Am. ed.) 314, 330, 331; Hutchinson* v. *Tindall, 2 Gr. Ch. 364; Miller* v. *Wack, Sax. 204; 3 Greenl. Ev. § 284.*

III. If Joseph Lloyd was trustee for his father, the trust was a secret or fraudulent one, and cannot be enforced against a *bona fide* purchaser for value. *Den* v. *Monjoy, 2 Hal. 173; Cutler* v. *Tuttle, 4 C. E. Gr. 562; Osborn* v. *Osborn, 2 Stew. Eq. 337; Hill on Trustees 106, 107; Lister* v. *Lister, 8 C. E. Gr. 49; Perry on Trusts §§ 147, 162; Lewin on Trusts 250; City National Bank* v. *Hamilton, 7 Stew. Eq. 158; Betts* v. *Francis, 1 Vr. 152; Besson* v. *Eveland, 11 C. E. Gr. 471; Cutler* v. *Tuttle, 4 C. E. Gr. 562; Story's Eq. Jur. § 434; Post* v. *Stiger, 2 Stew. Eq. 556; Luers* v. *Brunjes, 7 Stew. Eq. 19; Lathrop* v. *Groton Bank, 4 Stew. Eq. 273; Collier* v. *Pfenning, 7 Stew. Eq. 22; Fletcher* v. *Peck, 6 Cranch 133; Danbury* v. *Robinson, 1*

*McCart. 213 ; Rutgers* v. *Kingsland, 3 Hal. Ch. 178, 658 ; Losey* v. *Simpson, 3 Stock. 254 ; Whitworth* v. *Guagain, 3 Hare 426 ; Lavellette* v. *Thompson, 2 Beas. 276 ; Reilly* v. *Mayer, 1 Beas. 55 ; Pilcher* v. *Rawlins, L. R. (7 Ch. App.) 259 ; Boynton* v. *Winslow, 37 Pa. St. 315 ; Nicholls* v. *Dissler, 2 Vr. 462 ; 4 Kent's Com. (12th ed.) 435 ; Den* v. *Ketchum, 4 Dev. & Batt. 414 ; Vreeland* v. *Bruen, 1 Zab. 235 ; Cummins* v. *Blair, 3 Harr. 151 ; Drake on Attachment § 224 a ; Garwood* v. *Garwood, 4 Hal. 194 ; Campion* v. *Kille, 1 McCart. 229, 2 McCart. 476 ; Whitcomb* v. *Woodworth, 54 Vt. 544 ; Cushing* v. *Hurd, 4 Pick. 257.*

IV. The respondent, William W. Conover, is a *bona fide* purchaser for value, without notice. *Perry on Trusts § 220 ; Weber* v. *Weitling, cited supra ; Eberhart* v. *Gilchrist, 3 Stock. 167.*

V. The conveyance from Joseph Lloyd to Richard M. Blatchford is void under our attachment act, and was made and accepted after Richard M. Blatchford had constructive, if not actual, notice of the attachment proceedings against Joseph Lloyd. *Rev. p. 45 § 18 ; Avery* v. *Stephens, 48 Mich. 246 ; Parks* v. *Jackson, 11 Wend. 442 ; Bispham's Prin. Eq. § 274 ; Hunt* v. *Field, 1 Stock. 36 ; Williams* v. *Michenor, 3 Stock. 520 ; Robert* v. *Hodges, 1 C. E. Gr. 300 ; Miller* v. *Jamison, 9 C. E. Gr. 41 ; Norton* v. *Birge, 35 Conn. 250 ; Jackson* v. *Andrews, 7 Wend. 157 ; Huxley* v. *Harrold, 62 Mo. 516.*

VI. The four mortgages made by Isaac S. Lloyd to Thomas Lloyd, his son, now in the possession of the appellants, should be delivered up to the respondent to be canceled of record. *Parker* v. *Child, 10 C. E. Gr. 41 ; Johnson* v. *Harmon, 19 Iowa 56 ; Knowles* v. *Rablin, 20 Iowa 101.*

The opinion of the court was delivered by

DEPUE, J.

Joseph Lloyd, in 1872, was seized of a tract of land situate in the county of Monmouth. On the 10th of April, 1872, Asher

Holmes, as a creditor of Lloyd, sued out of the circuit court of said county a writ of attachment against the estate of Lloyd as a non-resident debtor.   This writ was duly executed by attaching the said land as Lloyd's property.

Lloyd, by a deed executed May 23d, 1872, and recorded May 28th, 1872, conveyed the premises to Richard M. Blatchford to secure the repayment of money loaned by him to Lloyd.

John E. Vanderveer, Obadiah Holmes, John S. Applegate, Marsh & Co., and others, were, by rules of court, admitted as applying creditors under the attachment.   An auditor was appointed, judgment by default in the attachment suit on the auditor's report was entered, and an order for a sale by the auditor of the lands attached was made in the attachment suit.

On the 26th of March, 1873, on the application of Lloyd, the judgment by default was opened and his appearance entered at the suit of the plaintiff in attachment and each of the applying creditors, pursuant to the thirty-eighth section of the attachment act, without any bond being given.   Thereupon the attachment proceedings were, by rule of court, set aside, saving all liens created by the statute.

Declarations were filed in said suits, to which the defendant filed pleas, and at January term, 1874, the suits were brought to trial, and judgments were obtained by Vanderveer, Applegate, Obadiah Holmes and Marsh & Co.   The plaintiff in the attachment did not obtain any judgment.   Vanderveer's judgment was entered January 29th, 1874, and, on the 30th of January, 1874, the judgments of Applegit, Obadiah Holmes and Marsh & Co. were entered.   Upon these several judgments executions duly recorded were issued, directed to the sheriff of the county of Monmouth, and executed by him by a levy upon the same premises.   The sheriff subsequently made sale of the premises under and by virtue of the said executions, and Conover became the purchaser thereof, and took a sheriff's deed therefor bearing date December 9th, 1874.

Conover, being in possession, filed this bill against the executors and devisees of Blatchford, to have his title under the sheriff's deed declared superior to Blatchford's title under the

14

deed from Lloyd. He claims that his title has relation to the time when the writ of attachment was issued.

The attachment act gives the writ of attachment a lien on the lands of the defendant from the time it was issued, and makes void all conveyances by him thereafter, and declares that a deed of conveyance therefor by the auditor shall convey to the purchaser the estate the defendant had at the time the writ became a lien. *Rev. 45 § 18; Id. 51 § 53.* The lien so created is for the benefit of the plaintiff in the attachment suit, and all creditors who may become applying creditors. *Cummins* v. *Blair, 3 Harr. 151.* On the other hand, the act concerning judgments provides that no judgment shall affect or bind lands but from the time of the actual entry thereof on the minutes or records of the court. *Rev. 520 § 2.*

Blatchford's deed is subsequent to the issuing of the writ of attachment, and prior to the entry of the judgments upon which the executions were issued under which the sheriff made sale. The question presented is whether Conover's title taken under the sheriff's sale will have relation to the time when the writ of attachment was issued, and have the same priority it would have had if taken under a sale by the auditor in the attachment proceedings.

The proceeding for the collection of debts by attachment is altogether statutory, and derives its efficacy wholly from the terms and provisions of the statute. "It has," as was said by Chief-Justice Beasley, "no other or greater effect than such as has been, either in express terms or by reasonable intendment, given to it by the legislative will." *Miller* v. *Dungan, 7 Vr. 21.* "Nothing," says Mr. Drake, "seems more distinctly to characterize the whole system of remedy by attachment than that it is a special remedy at law, belonging exclusively to a court of law, and to be resorted to and pursued in conformity with the terms of the law conferring it." *Drake on Attachment § 4 a.*

The attachment act in force in this state possesses peculiar features which distinguish proceedings under it from proceedings under attachment acts of sister states. In most of the other states the writ is sued out by a creditor for his benefit alone, and

no other creditor being allowed to participate in the fruits of the attachment, the property attached is sold under process of execution issued upon the judgment of the plaintiff in the attachment. The passage cited from Drake on Attachment, in which the author says that the lien of the attachment becomes merged in the plaintiff's judgment, and its priority is maintained and enforced by the judgment, is taken from the decision of a court upon a statute under which the attachment is for the benefit only of the creditor who sues out the writ, and his judgment and the execution thereon are the means provided for enforcing the lien obtained by the writ. *Drake on Attachment* § *224 a ; Bagley* v. *Ward, 37 Cal. 121.* Decisions upon statutes of that character have no application to our statute, under which (except where the writ is sued out of a justice's court) the proceedings are for the benefit of all the defendant's creditors, and creditors who come in under the attachment are entitled to share in the property seized under the writ on an equality with the plaintiff at whose suit the writ was issued. With respect to the property attached and the means of enforcing the lien of the writ of attachment, the proceeding provided by the act is *in rem.* Only one judgment is to be entered in the attachment suit, and that judgment includes the debts found to be due to all the creditors respectively, as well those who come in under the attachment as the plaintiff by whom the writ was sued out; and the sale and conveyance of the property attached, which the statute contemplates as the execution of the lien of the writ, and as the method of transferring a title to the purchaser as of the time the writ was issued, is a sale and conveyance by the auditor, under an order to sell made by the court in the attachment suit.

In the court below, Conover's title under the sheriff's deed seems to have been given relation as of the time the writ of attachment was issued, *ex necessitate,* on the theory that a sale could not be made by the auditor where the defendant had appeared to the suits of the plaintiff and the applying creditors. This opinion was based on a literal rendering of the fifty-first section of the act. That section enacts :

"That when judgment on the report of the auditor shall be entered against the defendant by default, the auditor may, by virtue of an order of the court for that purpose, make sale and assurance of the goods and chattels, lands and tenements, of the said defendant, which were attached and taken as aforesaid, and upon which the attachment remains a lien."

The chancellor's view of this section is that under it the auditor was not empowered to sell the lands attached except where the judgment had been entered by default. This construction we think needlessly strict in view of the course of legislation on this subject, the obvious purposes of the act, and the liberal construction of its provisions which the legislature has prescribed as the means of carrying into effect the legislative purpose.

Section 51 of the present act is section 21 of the act of 1798 (*R. L. 360*), with the exception of the words " and upon which the attachment remains a lien," which were inserted in the Revision of 1874. The sixteenth section of the act of 1798 provided for appearances to the suits of the plaintiff and applying creditors by filing special bail in each suit, and upon such appearances the writ of attachment and all proceedings under it were entirely set aside. No lien on property attached was saved when, up on such appearance, the attachment was set aside, and in such cases there could be no sale by auditors; therefore, in directing a sale by auditors when the judgment was entered by default, the legislature used language which was descriptive of and applicable to the condition of affairs in which there was property which might be subject to a sale in proceedings under that act. In 1820 a supplement to the act of 1798 was passed, which, by the third section, provided for continuing the lien of the writ on lands, notwithstanding the defendant appeared and filed special bail. That section prohibited the conveyance by the defendant of the lands or any estate therein whereof he was seized or possessed or entitled unto at the time of the issuing of the writ of attachment, and enacted that the writ should, immediately on the issuing thereof, become and remain a lien on said lands as against the defendant and all persons claiming under him by virtue of any such conveyance, until the plaintiff and the applying credit-

ors should be satisfied of their debts, or until judgment should be rendered against the plaintiff and creditors under the attachment, or the said attachment should be discontinued, and that all conveyances pending the attachment should be void as against the plaintiff in attachment and the creditors that should become parties thereto. *R. L. 724.*

The supplement of 1820 contemplated that appearances might be entered by the defendant by filing special bail, pursuant to the sixteenth section of the act of 1798, whereby, by force of that section, the writ of attachment and all proceedings under it would be set aside; and it provided for the continuance of the lien of the writ upon lands, notwithstanding such setting aside; and yet it contained no express provision for the enforcement of the lien by a sale of the lands. The plain intent of this act was that the attachment suit should remain *in esse* as a proceeding *in rem* for the purpose of enforcing the lien of the writ upon the lands attached, although the defendant had appeared; and it is a reasonable construction of that act that the lien so retained should be made available by a sale in virtue of an order of the court, and by the officer who, by the original act, was designated to make sale and disposition of property brought under the control of the court by the writ of attachment. By no other process recognized by the act could the lien of the writ be carried into execution. Section 3 of the act of 1820, and section 21 of the act of 1798 were retained in the Revised Statutes of 1845, and also in the Revision of 1874, as originally passed, except that in the Revision of 1874 the words, " and upon which the attachment remains a lien," were added. *R. S. 48* §§ *8–35 ; Rev. 45* §§ *18– 51.* The construction these two sections would bear relatively to each other as they stood in the act of 1798, and the supplement of 1820, was not altered by the two acts being comprehended in one act in these revisions.

But if there should be any doubt as to the power of the auditor to sell the lands attached under such circumstances, arising from the words of the fifty-first section, there can be no doubt on that subject where the defendant appeared, under the thirty-eighth section.

The thirty-eighth and thirty-ninth sections were introduced into the attachment act by a supplement passed in 1871.  *P. L. of 1871 p. 22.*   The thirty-eighth section authorizes appearances simply by entry thereof in the clerk's book, and notice to the plaintiff and applying creditors without any bond being given. The thirty-ninth section provides that in case of such appearance the lien of the attachment shall continue; proceedings by *scire facias* may be had against any garnishee, and the movable property attached shall remain in the custody of the sheriff and his bailee, thus leaving the property attached *in statu quo* in all respects; and the court is expressly empowered in such cases to order property sold as perishable, and to appoint an auditor with like power in all respects as if no appearance had been entered. *Rev. 48.*

It will be observed that by these sections there is no provision for setting aside the attachment proceeding, as there is upon an appearance effected by giving a bond under the thirty-second or thirty-seventh section.   In lieu of such a provision section thirty-eight simply declares that no other or further claim by creditors shall be put in under the attachment after the entry of such appearance. It also provides that the suits of the plaintiff and the applying creditors shall thereafter proceed, in all respects, as if commenced by summons.   The lien of the attachment is preserved, notwithstanding such appearance, with authority in the court to appoint an auditor with like power in all respects as if such appearance had not been entered.   The legal effect of these sections is to leave the attachment suit and all proceedings under it precisely as if no appearance had been entered, except that the claims of the plaintiff and the applying creditors, instead of being litigated before the auditor, shall be determined before the court and a jury, the same as if the parties had commenced suits therefor by summons.   The power of the auditor to make sale and conveyance of lands attached in virtue of a special order of the court, is also retained.   The restriction of the powers of the auditor to sales of personal property is repugnant to the language of the act; for the section declares that the auditor so appointed shall be invested " with like powers in all respects " as if the proceed-

ings in the attachment suit had not been interrupted by the defendant's appearance.

Indeed, if there be need to resort to any implication of a power to sell in order to carry the lien of the writ of attachment into execution, an implication in favor of such power in the auditor would be the only implication allowable. There is no power for the sale of lands granted anywhere in the act otherwise than upon the judgment in the attachment suit; no power of sale by any officer of the court except the auditor; no authority to sell except by a special order of the court for that purpose. A sale by the sheriff, or by virtue of an execution, or upon any judgment other than the judgment in the attachment suit, is nowhere alluded to in the act. No provision is contained in it for giving judgments recovered by creditors, after appearances entered, a lien as of the time the writ of attachment issued. The lien which is retained is, in express words, the lien of the writ of attachment. The conveyances by the defendant, which are made void, are those made pending the attachment, and the conveyances which, by the statute, are given priority over conveyances made by the defendant after the writ issued, are such as are made by the auditor and in the attachment proceedings.

An execution upon a judgment as the means of giving effect to the lien of the writ of attachment, is not only inconsistent with the procedure established by the attachment act, but is also at variance with statutory provisions restricting the lien of judgments upon lands to the time of actual entry, and giving priority to executions as of the time of the delivery of the recorded execution to the sheriff. The right to make such use of a writ of execution cannot be implied from the words of the statute that " said writ shall  *  *  *  remain a lien on said lands  *  *  * until the plaintiff and such of the creditors of the defendant as shall apply under the attachment shall be satisfied their just debts." These words do not create a general lien in favor of these creditors, to be enforced by suit in equity or actions at law, . as liens are usually enforced. The lien given is the lien of the writ of attachment, and it is clear that it was the legislative intent that that lien should be carried into effect by means of pro-

cess and procedure in the attachment suit. Although the lien given is upon all the lands owned by the defendant at the time of issuing the writ, it is settled that the writ creates no lien on real estate, nor can any title be acquired by virtue of a sale under proceedings in the attachment unless the land is inventoried, appraised and returned by the officer as attached, and thus put under the control of the court to be disposed of and applied under the provisions of the act. *Tomlinson* v. *Stiles, 4 Dutch. 201; 5 Id. 426.*

Appearance by the defendant at the suit of any applying creditor will produce the result that the court, having by such appearance obtained jurisdiction of the defendant's person, the judgment recovered by the creditor, besides the ascertainment of the amount due upon his claim presented under the attachment, will obtain also the quality of a judgment *in personam* at common law, on which the creditor may issue execution and seize and levy upon the defendant's property as if the suit had been commenced by a summons duly served. But the judgment, considered as a common law judgment, will be subject to the statutory provision that it shall not bind lands except from the time of actual entry; and a purchaser taking title under it will take only such title as the defendant had when judgment was entered, subject to all prior liens and encumbrances. If the creditor at whose suit the appearance is entered desires to avail himself of the lien of the writ of attachment and to reach the title the defendant had when the writ issued, he must have his debt, as ascertained by the judgment in his favor, embraced in the judgment in the attachment suit, whereon the auditor may make a sale and conveyance of the lands attached, which, by the statute, shall convey the estate therein which the defendant had at the time the writ of attachment issued.

Nor will the fact that in this case one of the executions under which the sheriff's sale was made—that of Applegit—commanded the sheriff to cause the damages recovered to be made of the lands and real estate " whereof the defendant was seized on the 10th day of April, 1872 "—which is the date of the issuing of the attachment—avail the purchaser. A sheriff selling lands

Blatchford v. Conover.

has only a naked power to sell, given by the statute. · *Todd* v. *Philhower, 4 Zab. 796.* The foundation of his power of sale is the judgment. The execution under which he acts is simply the process of the court authorizing its officer to carry the judgment into effect. *1 Bouv. Law Dict. 495 tit. " Execution."* In making title to lands under a sheriff's sale, the judgment as well as the execution must be shown in evidence. *Swan* v. *Despraux, 7 Hal. 182.* The statute has not dispensed with proof of either as a requisite to title under a sheriff's deed; it has only made the recitals in the deed *prima facie* evidence of the judgment and execution. *Rev. 1045 § 13.* And the execution must be supported by the judgment produced. In *Swan* v. *Despraux,* decided in 1831, which was an action of ejectment, title under a sheriff's deed was held bad when the judgment recited in the execution differed a few dollars from the judgment produced in evidence. In November of the same year a statute was passed which made the deed of the sheriff good notwithstanding a variance between the execution and the judgment (*Harr. Com. 368 ; Rev. 1043 § 8*) ; and in *Newcomb* v. *Downam, 1 Gr. 135, 140,* one of the objections to title under a sheriff's deed was that the judgment was signed June 4th, 1819, and the execution directed the money to be made of the lands whereof the defendant was seized on the first day of that month ; and the court considered the objection unavailable because amendable under the act last mentioned. This act has been liberally construed, and, as was said by Dayton, J., in *Arrowsmith* v. *Sayre, 1 Harr. 532, 534,* " all the law requires is that there should in point of fact be a judgment existing as a ground-work of authority for the sheriff to sell." The judgment being the foundation of title by sheriff's sale, the statute determines the actual entry of judgment as the commencement of the lien, and title derived under it cannot be antedated by a direction in the execution that the sheriff should sell and transfer a title as of a day prior to the time the judgment took effect.

Conover having taken his title under a sheriff's sale by virtue of executions upon judgments of applying creditors, his title has relation only to the time the judgments were entered, and is therefore subsequent to Blatchford's title under his deed.

Whether Conover may not be subrogated to the rights of the judgment creditors under the writ of attachment we have not considered. His bill is not framed in that aspect, and there are not proper parties in court for that relief.

Nor can we consider, on this issue, the relief prayed by the defendant's cross-bill, that Blatchford's title be declared superior to the lien of the writ of attachment. Conover's title under his sheriff's deed—which is all that is put in issue in this suit—having relation only to the date of the entry of the judgments upon which the sheriff made the sale, he is not, as the controversy now stands, the proper party to litigate the question as to the validity of the lien of the writ of attachment.

The complainant's bill having been filed under the act to compel the determination of claims to real estate in certain cases, and to quiet the title to the same, the decree in this suit must fix and settle the rights of the parties in the premises. *Rev. 1190 § 6.* So much of the decree appealed from as determines that Conover's title is superior to that of Blatchford should be reversed, and a decree be entered declaring Blatchford's title under his deed superior to that of Conover under his sheriff's deed, with costs to be taxed against the complainant. That part of the decree which dismisses the defendant's cross-bill should be affirmed.

Neither party succeeding wholly in this court, neither should have costs here.

PARKER, J. (*dissenting*).

In this cause I am unable to arrive at the conclusion reached by the other members of the court.

On the 10th day of April, 1872, Joseph Lloyd was the absolute owner of the land in question. On that day an attachment issued against him at the suit of Asher Holmes, and became at once a lien on the land.

On the 23d day of May, 1872 (more than a month after the issuing of the attachment), Joseph Lloyd conveyed the land which had been attached to Richard M. Blatchford.

The contest in this cause is between William W. Conover,

who claims, as purchaser at sheriff's sale, under the attachment proceedings, and the heirs of Richard M. Blatchford, who rely on the deed to him from Joseph Lloyd.

Whether the proceedings under the attachment were such as to give Conover a title to the land vesting at the date of the writ, is the real question.

Before the date of the deed from Lloyd to Blatchford, not only had the attachment issued and been executed by the sheriff, but several applying creditors under it had filed claims, and entered rules in the minutes. When Blatchford took the deed he had legal notice of the attachment. Had he examined the record he would have known of the lien.

After an auditor had been appointed, and the usual defaults taken, judgment was entered on the report of the auditor in favor of the plaintiff in attachment and all the applying creditors.

Subsequently, the defendant in attachment, without giving bond, appeared, and had the judgment by default opened. This action on the part of defendant did not destroy the lien of the attachment. The statute expressly provides that in case of appearance, the lien of the attachment shall continue. In this case, the order signed by the judge of the circuit court, where the attachment was pending, reserved, in express terms, all liens created by the statute. The effect of the appearance of defendant was to enable him to contest the validity of the several claims, but did not, in any degree, relieve the land from the lien of the attachment.

The order of the judge, before mentioned, required the defendant to accept declarations to plead and take short notice of trial. Trials were had on the several claims, and in each case judgment was rendered against the defendant in attachment. These judgments were entered in 1874 (that of John S. Applegate, executor, being the first in date), and executions on the several judgments were delivered to the sheriff, who sold the land to Conover, by virtue of the executions. The execution in favor of Applegate, executor (which execution has never been set aside), commanded the sheriff to make the money out of the lands whereof said Joseph Lloyd was seized on the 10th day of April, 1872 (the

date of the attachment), by selling the estate Joseph Lloyd had therein at that date.

Now, if the title of the purchaser at sheriff's sale relates back to the date of the attachment, the deed from Lloyd (the attachment debtor) to Blatchford should be declared null and void, as against Conover's deed, because the attachment was prior to the deed. In fact, the statute declares that an attachment debtor shall not, after the issuing of an attachment, convey lands, and that all conveyances made by the defendant, pending the attachment, shall be void against the plaintiff in attachment, and the creditors who shall become parties thereto.

On the part of the Blatchfords, it is said that the lien of the attachment was lost, because the sale of the land attached was not made by an auditor. The statute does not give power to an auditor to sell land where the defendant in attachment appears and contests the validity of the claims before a jury, and, without such gift of power, an auditor (who can do nothing without statutory authority) cannot sell.

It is claimed that the thirty-ninth section of the attachment act gives authority to an auditor to sell after the appearance of the defendant, but that section evidently refers only to the sale of personal property.

It is true that where a defendant in attachment appears and resists the claims of the plaintiff and the applying creditors, he renders himself liable to a general judgment affecting goods and lands not attached, and as to those the lien does not operate as of a date anterior to the judgment; but as to the lands which the defendant owned at the time the attachment issued and which were actually attached, the transfer of title to the purchaser by sale and conveyance by the sheriff will relate back to the time of issuing the writ. The judgment in such case is against the defendant both *in rem* and *in personam*. As to the land attached, the lien of the attachment merges in the judgment, but in the merger the priority of the attachment lien is preserved.

It may be said the law contemplates that the plaintiff in attachment and the applying creditors should receive the proceeds of the land attached, in proportion to the amount of their several

claims, and if one applying creditor have judgment, as in this case, before the others, he might get priority and thus defeat the object of the attachment act.

But this result would not follow. As to the land attached, the lien of the plaintiff and each of the applying creditors fastens at the same date. If sold on one or more executions, the money could be ordered into court and distributed *pro rata*. In this case the land attached brought a sum sufficient to pay all applying creditors, and the necessity of paying the money into court did not exist.

The great object of the attachment act is to fasten on the land attached at the date of the writ. The whole scope of the act gives to applying creditors, who make good their claims, the benefit of the writ as fully as is given to the plaintiff in attachment. If, after the appearance of the defendant, the plaintiff, for some reason, does not proceed, any applying creditor, obtaining judgment, can sell the land. He will not lose his rights under the attachment from failure of the plaintiff to act. It was not necessary in this case, in order to convey to the purchaser the estate of which Joseph Loyd was seized at the date of the attachment, that the sale should be by virtue of the judgment and execution in favor of the plaintiff in attachment.

The court in which the attachment was pending, upon the appearance of the defendant, ordered the plaintiff and applying creditors to file declarations, accept pleas and give short notice of trial, and proceed in all respects as if the suits for their claims had been commenced by summons, saving the lien. The meaning of this order, founded on the statute, is that the proceeding after appearance shall be as if summons had been the first process, and if, at the trial, a verdict be rendered for the plaintiff or any applying creditor, judgment shall be entered and execution issue, which execution shall convey the estate of the defendant in the land which had been attached, not from the time of the entry of the judgment, but the estate of which he was seized at the issuing of the attachment. The statute concerning judgments must be construed in connection with the language of the attachment act,

which gives the defendant the right to go before a jury to contest claims, but, if unsuccessful, saves the lien of the creditors.

The seventy-fifth section of the attachment act requires that it shall be construed in the most liberal manner for the benefit of creditors. Mr. Applegate and other creditors who came in under the attachment, who proved their claims, when required, before juries, and who received from the sheriff the money which Conover (the purchaser) paid for the land, were *bona fide* creditors. Under the attachment, they had a lien on the premises in question (which lien has never been removed) for the amount of their several claims, prior to the date of the deed from Lloyd to Blatchford. The purchaser at the sheriff's sale under execution issued out of the circuit court, succeeded to the right of the creditors, and is entitled to the benefit of the attachment lien.

I think the decree of the chancellor which declares the deed from Joseph Lloyd to Richard M. Blatchford to be void, should be affirmed. I also vote to affirm the decree which dismisses the cross-bill.

For affirmance—PARKER—1.

For reversal—THE CHIEF-JUSTICE, DEPUE, DIXON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, PATERSON, WHITAKER—11.