LOUIS COHN, respondent,

*v.*

SARAH PLASS et al., appellants.

[Submitted March 22d, 1915.   Decided November 15th, 1915.]

1. A grantor conveyed land to his son and took back a purchase-money mortgage which he afterwards recognized as a subsisting lien; he also by reference in subsequent deeds for adjoining land recognized the title of grantees from his son.—*Held*, that the deed to the son could not be regarded as fictitious and a mere nullity.

2. The burden is upon one who asserts an actual possession against the legal title to prove it.

3. If a grantor remains in possession after his conveyance, he holds possession in trust for his grantee, and his possession cannot become adverse without notice to the grantee.

4. When a mortgagee holds possession for twenty years after default by the mortgagor his title under the mortgage becomes absolute.

5. A mortgagee has no right to enter or bring ejectment before default. His right to possession is only a right of re-entry upon failure of the mortgagor to perform the condition, and such an entry requires publicity.

<hr>

On appeal from a decree advised by Advisory Master Charles J. Roe.

On bill to quiet title.   The decree adjudged the title of the complainant to be good.

The following statement of the facts is extracted from the conclusions of the master: The tract in question is situate in the city of Bayonne along Avenue H. The complainant acquired his title by a warrantee deed made by John VanBuskirk and wife, dated November 4th, 1912, and as a further muniment of title received from the grantor the assignment of a mortgage given by Edward VanBuskirk to the grantor to secure $2,000, dated June 7th, 1881, and payable in one year.

The defendant Ralph Packard claims an interest in seventeen-hundredths parts of said tract under a deed made by the defendant Plass, to him on June 20th, 1912, and also under a certificate of sale for taxes under the Martin act, dated November 10th, 1893, wherein it is certified that the said premises were sold to Harriet L. Packard, who devised her property to the defendant Ralph L. Packard. The redemption of this certificate of sale was never cut off and the property was redeemed by the complainant.

The title of the defendant Packard to the seventeen-hundredths parts arose as follows: In 1881, John VanBuskirk, the grantor of the complainant, conveyed the tract in question to Edward VanBuskirk for the consideration of $2,000, which was secured by the mortgage of $2,000 before mentioned. Edward VanBuskirk, simultaneously with said conveyance, conveyed the property to one hundred grantees. These grantees were men nominated by the Liquor Dealers Association of Bayonne. The object of the conveyance was to make these one hundred nominees freeholders in order to qualify them to recommend licenses for the sale of liquor. The deed was left with the attorney of the Liquor Dealers Association and by him recorded. The city of Bayonne refused to recognize the qualifications of these persons and the plan so devised fell through. Neither Edward VanBuskirk, the intermediary, nor any of these grantees endeavored to take possession or claim any title under said conveyance. John VanBuskirk, who, for more than twenty-five years before, had been the owner of the said lands, which was a part of an original farm, devised to him, continued to retain the possession and to occupy the land in question, in the same manner that he had always occupied it, until the deed made by him to the com-

plainant. No principal or interest was ever paid by the mort-gagor or his assigns upon the mortgage of $2,000 made to John VanBuskirk at the time of said transfer. In 1891, the defendant Sarah Plass acquired title to seventeen-hundredths parts of said premises through various deeds made to her by seventeen of these one hundred grantees. This interest was conveyed to the defendant Packard, as before stated.

John VanBuskirk, when he made the conveyance in 1881, and received back a mortgage as consideration for the said convey-ance, retained the possession of the mortgaged premises without dispute by the mortgagor; he continued to retain such possession after default in payment of said mortgage and until the right of redemption had expired by the statute of limitations.

*Mr. Elmer W. Demarest,* for the respondent.

*Messrs. Hartshorne, Insley & Leake,* for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The important question in the case is whether the conveyance by VanBuskirk to the complainant conveyed a good title to the whole tract, including the seventeen undivided one-hundredths (17/100) conveyed by various grantors to Plass in 1891, and by Plass to Packard in 1913. The complainant at different stages in the case has relied on three inconsistent theories to sustain VanBuskirk's title—(1) that the title acquired from his an-cestor never passed out of him; (2) that he acquired title after 1881 by adverse possession; (3) that he had a perfect title as mortgagee in possession by lapse of time.

1. The replication sets up that the deed from Edward Van-Buskirk to his numerous grantees, who may be called the liquor dealers, was fictitious, and that John VanBuskirk continued in possession as owner and mortgagee. If, in fact, the deed from Edward to the liquor dealers was fictitious, that could not affect the validity of the deed from John to Edward, and as Edward never reconveyed to John, the advisory master could not be jus-

tified in sustaining the title conveyed by John to the complainant in 1912, on the theory that he was conveying the title acquired from his ancestors. The paper title, if the deed to the liquor dealers was fictitious, would be in Edward still. To decide the case on this ground would be to take too narrow a view and would not settle the rights of the parties. It is, indeed, vital to the defendant Packard's claim to sustain the deed from Edward to the liquor dealers. We think the evidence makes it entirely clear that the deed was valid and effectual to convey the title. John VanBuskirk was at the time, as Judge Hudspeth testified, in politics, wanted to make political capital, and was only too ready to offer the property in order to qualify men as freeholders to sign recommendations for liquor licenses. As he received no consideration for the conveyance, the scheme was to protect him by a mortgage on the property. To accomplish that, he conveyed to his son, Edward, and took a mortgage back, and then Edward conveyed to the liquor dealers subject to the mortgage. The deed to the liquor dealers was delivered to Judge Hudspeth, who had it recorded. The scheme to qualify men as freeholders in this wholesale way fell through. The land was salt meadow and seems to have been of little value. No attention was paid to it for years. Under these facts, we think that Packard had paper title to the undivided seventeen-hundredths of the tract, and that John VanBuskirk had no paper title except as mortgagee unless we go further back and hold his deed to Edward to be fictitious and a mere nullity. This cannot be done. The reasons that are applicable to the deed from Edward to the liquor dealers are equally applicable to the deed from John to Edward. In addition, there are repeated acts of recognition by John of the validity of both deeds. The very fact that he took back a mortgage as security was itself a recognition, since Edward's conveyance by way of mortgage to John was naught unless Edward had acquired the land by deed from John. John recognized this mortgage as a subsisting lien years afterwards. He not only conveyed to Cohn in 1912 subject to the mortgage, but he assigned the mortgage itself to Cohn and made it an express condition that Cohn's title, by virtue of the assignment, should not merge into any other title which he might have in the mortgaged

premises. John not only recognized the validity of his deed to Edward, but he also recognized the validity of the deed from Edward to the liquor dealers. In a deed made to Wenner, in 1894, he bounds the land thereby conveyed by "lands now or formerly of the Liquor Dealers Association," and five years later, in another deed to Wenner, he bounds the land thereby conveyed by "lands known as the liquor dealers' plot, formerly land of John VanBuskirk." The use of the word "formerly" is convincing that John, in 1899, recognized by his deed and under his seal that the liquor dealers' plot did not then belong to him. If John had title to the liquor dealers' plot in 1912 when he conveyed to Cohn, it was derived either from adverse possession or from possession as mortgagee.

2. He fails to establish either that he had possession or that it was adverse. Ordinarily, the legal title draws to it the possession, and the burden is upon him who asserts an actual possession against the legal title to prove it. The tract in question was two acres of salt meadow. The possession relied on was the occasional cutting of salt hay. John himself testified and reiterated that the cutting was between Avenue H and Avenue I, in Bayonne. The tract in question lies between Avenue G and Avenue H. His counsel, after the testimony above mentioned, put this question: "Is it not a fact that it was between G and H, as those avenues are laid down on the map," and he answered, "I think you are right about that. I have not looked at the map for a good while." Aside from the impropriety of so leading a question upon a vital point, the answer is of no value; looking at the map could not help him in recollecting where the actual cutting was.

The witness Levine did not help. He said he had been cutting some "until the time the Standard took it" (evidently meaning the Standard Oil Company); what the Standard Oil Company took was not the liquor dealers' lot, but VanBuskirk's homestead. He also said that the liquor dealers' plot was far away from Packard's Digging, while, in fact, Packard's Digging was in part on the tract. Banbury did testify to some cutting of grass, but he was very indefinite both as to the place and the time. He seems to have thought that he cut all over VanBuskirk's land

(which, perhaps, he did). Watson VanBuskirk testified that he wouldn't say that he went right on the liquor dealers' plot. The fact is that the land was not marked out so that the witnesses could tell whether they were cutting on the liquor dealers' plot or not.

If, however, possession, in fact, by John VanBuskirk, had been proved, the complainant would be met by a legal difficulty. The contention throughout was, as the master found the fact to be, that John continued to retain the possession and to occupy the land as he had always occupied it. He was, then, after the deed to Edward and before default in the mortgage, a grantor in possession. Under our law, the mortgage was a mere security until default. *Sanderson* v. *Price, 21 N. J. Law 646, note.* This has long been regarded as settled law. *Shields* v. *Lozear, 34 N. J. Law 496, 501; Woodside* v. *Adams, 40 N. J. Law 417, 422.* There was no default in the mortgage for at least six months; the complainant himself avers in his replication that the interest payment became due six months after the date of the mortgage and was paid by Edward, the mortgagor; that no interest has been paid since and that the mortgage is due. Until default whatever possession John held could not have been in his own right. If he held at all he held in trust for his grantee, Edward, or for Edward's grantees. He was estopped to deny his own deed, and his possession was the grantee's possession. *Van Keuren* v. *Central Railroad Co., 38 N. J. Law 165; Bingham* v. *Kirkland, 34 N. J. Eq. 229* (at *p. 236*); *Rankin* v. *Coar, 46 N. J. Eq. 566* (at *p. 571*). Since such possession as he held was in trust for his grantee, and he was estopped by his deed, his possession could not become adverse to the grantee's *cestuis que trust,* unless John repudiated the trust and assumed an adverse position with notice to the grantees. Such is the well-settled rule as between parties and *cestui que trust. Perry Trusts § 863; 1 Lew. Trusts 285.* The rule has been applied to cases where the grantor remains in possession of land. *Buckholder* v. *Sigler, 7 Watts & S. 154; Olwine* v. *Holman, 23 Pa. St. 279; Ingles* v. *Ingles, 24 Atl. Rep. 677; Schwalbach* v. *Chicago, M. & St. P. Ry. Co., 40 N. W. Rep. 579; Riha* v. *Pelnar, 57 N. W. Rep. 51.*

There is no evidence that John VanBuskirk ever gave notice to the liquor dealers that he was claiming adversely to his own grant. His case was rested on an entirely different theory—that the liquor dealers never got any title, since the deed to them was bogus. If that were so, there could be no possession adverse to them, since they would be mere strangers to the title who never had even possession. John VanBuskirk failed to prove title by adverse possession, and in that respect the complainant's case failed.

3. The third theory of the complainant's case is that John VanBuskirk was a mortgagee in possession for so long a time that the equity of redemption is barred by the statute of limitations. Section 18 (*Comp. Stat. p. 3170*) enacts that if a mortgagee and those under him be in possession of the lands, tenements and hereditaments contained in the mortgage, or any part thereof, for twenty years after default in payment by the mortgagor, then the right of equity of redemption therein shall be forever barred. We see no reason to doubt the construction heretofore put upon this section in the court of chancery. *Chapin* v. *Wright, 41 N. J. Eq. 438.* Under that construction, if the mortgagee has possession for twenty years, his title becomes absolute. The question for us is whether the case shows such possession. If we look at it purely as a question of evidence, it is clear that John VanBuskirk himself never treated his claim under the mortgage as a title that had become absolute by the barring of the mortgagor's equity of redemption. A mortgage is a deed with a defeasance clause, and unless the terms of the defeasance were strictly performed, the estate of the mortgagee would become absolute upon default but for the relief afforded by equity under the name of "equity of redemption." When the equity of redemption is once barred, the title under the mortgage deed becomes absolute, and like the title under any other deed. That title is inconsistent with the continued existence of the mortgage as a mere security. John VanBuskirk, however, was so far from treating his title under the mortgage as absolute that he was studious, almost meticulous, to keep the mortgage alive as a subsisting lien. He conveyed to the complainant subject to the mortgage; he assigned the mortgage as a subsisting security,

and, to make the matter sure, took care to provide that the estate under the mortgage should not merge in the estate under the deed. He could not do otherwise under the theory on which the complainant's case was based, that he was never out of possession; for if he was never out of possession, his possession must have begun under his ancient title by inheritance, and so continued except as modified by his legal obligations as grantor to hold in trust for his grantee. Such possession was inconsistent with a taking of possession later, after default in the mortgage. There is, moreover, the further difficulty that he would be entering as mortgagee upon his possession as grantor-trustee, and such an entry could not be justified as against his grantee—*cestui que trust*—without advising the grantee of the adverse position then assumed. There is a further legal difficulty. Since the right of a mortgagee before default is only that of the holder of a security, he has no right to enter or bring ejectment before the default. The necessary logical result is that his right to possession is not, as at common law, the right of an owner subject only to be defeated by the performance of the condition by the mortgagor, but is only a right of re-entry upon failure of the mortgagor to perform the condition. Before that time, the mortgagor is entitled to the rents, issues and profits, and the mortgagee cannot bring ejectment and is not under the obligation to account as a mortgagee in possession. *Sanderson* v. *Price, 21 N. J. Law 646, note; Shields* v. *Lozear, 34 N. J. Law 496, 501.* Before the mortgagee can obtain possession he must enter upon the land. It is elementary that an entry requires publicity. *2 Bl. Com. 311, 312; 3 Bl. Com. 174.* No such entry is even attempted to be shown in this case. It is impossible to see how upon the complainant's theory that John VanBuskirk never went out of the actual possession, there could ever have been an entry by him as mortgagee, much less an entry with the publicity required by the law. We think, therefore, that the claim of title by twenty years' possession as mortgagee also fails the complainant.

The necessary result is that the decree adjudging the title to the whole of the land to be in the complainant must be reversed. It does not follow that the title to the undivided seven-

teen-hundredths should be decreed to be in the defendant. No issue was made of the complainant's right as mortgagee to foreclose his mortgage. It may be that his right of entry has not been barred. *Colton* v. *Depew, 60 N. J. Eq. 454.*

The result is that as the complainant has established no title, and the title of the defendants may possibly still be subject to the mortgage, the present bill should be dismissed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS —14.