ELIZABETH B. MASON

*v.*

HOME REAL ESTATE COMPANY.

[Submitted July 1st, 1919.   Decided July 28th, 1919.]

1. Possession is presumed to be in the holder of the legal title to land, and a decree must go to him unless the defence of adverse possession is made out, clearly and positively, by a preponderance of evidence.

2. In suit to quiet title to a strip of land fronting about four feet on a street, and extending back about forty-one feet between the houses of complainant and defendant, evidence *held* to show that defendant had not established adverse possession beyond a certain point, which included only one-half of the strip in dispute.

On bill, &c.

*Messrs. Swackhamer & Bird (Mr. Winfield S. Angleman* of counsel), for the complainant.

*Messrs. Codington & Blatz,* for the defendant.

BACKES, V. C.

This is a bill to quiet the title to a "V"-shaped strip of land fronting four feet plus, on Watchung avenue, Plainfield, and extending forty-one feet plus, between houses of the complainant and defendant, called the Mason and Stevens houses. It was formerly a part of the lot of one Pound, the predecessor in title of Stevens. In 1844 Pound conveyed the strip to his next-door neighbor, the predecessor in title of Mason. In 1866 he sold his house and lot and conveyed it by the description of the original survey, failing to except the strip, and by that description, through mesne conveyances, paper title has come to the defendant. Mary S. Stevens, the grantor of the defendant, in 1882, purchased and occupied the premises, including the *locus in quo,* it is alleged, until 1910, when she sold to the defendant. The documentary and record title is in the complainant, Mason. The defendant claims title by adverse possession.

The possession is presumed to be in the holder of the legal title, and the decree must go in favor of the complainant unless the defence of adverse possession is made out, clearly and positively, by a preponderance of the evidence. *Licari v. Carr, 84 N. J. Law 345.* The actual possession of the owners of the respective properties was delimited, up to a few years ago, by an ancient picket fence between the two houses, standing when Mrs. Stevens bought in 1882, and which she kept in more or less repair during her ownership, but of which all reliable trace has now disappeared. That it was on the title-boundary line from the apex of the triangular strip to the rear of the lots is admitted. The decision turns upon the location of the fence in its relation to the *locus in quo,* and as to that the evidence is hopelessly conflicting. The complainant's witnesses place it at eighteen inches to two feet from the Stevens house at the street line, while the defendant's witnesses say it was four feet away. The house is within an inch and a half of the "V" at the street

line, and in the rear, at a point ten feet about the apex of the "V," is within five inches of the title-boundary line of the two properties. The effect of the complainant's proofs is to put the fence practically through the centre of the "V," and that of the defendant's on the division of the lots as originally surveyed. Little reliance can be placed on the recollection of the witnesses as to where the fence stood, expressed in foot measurement. All is mere approximation. Mental measurement of space or distance between seen objects is, at best, nothing but guess work; and when based upon impression fathered by a dim recollection of the distant past, is most precarious, yielding gracefully according to fancy or conviction. There is in the case, however, certain undisputed facts and permissible inferences that lead me to believe that the complainant's approximation is more nearly correct. Whether the house was built before or after the strip was sold does not appear, but the map before me shows the facade parallel with the avenue to be at right angles with the side which substantially parallels the near line of the "V," and it would seem, therefore, that the house was built before. The fence was far enough away from the Stevens house to permit of a person standing comfortably in the space between, at least in the front part; but the space was not so great as four feet, and this, I conclude, partly from Mrs. Stevens' own basis of estimation. She testified that the last visible monument of the fence was a post that stood in the street line, which fell away through rot some years ago, and which, she says, had on it at the top a cross-piece four feet in length that reached from it to the house, to which it was nailed. Now, if allowance be made for the overlap, on the post and on the house, it cuts down the distance by just so much, whatever it may have been, and to that extent discredits the defendant's claim to the entire strip. Then, too, as is conceded on all hands, the space between the Mason house and the fence was used by the former owners of the complainant's property as a driveway for coal and ash wagons, and the distance between the house and the triangular strip was only six feet six inches, hardly sufficiently wide for wagons of the average width—six feet over all. The only possible motive for buying the strip by the complainant's prede-

cessor, it seems to me, would have been the widening of the driveway. The evidence is, as I have said, that the fence ran along the title lines of the two properties, from the extreme rear to the point of the strip, and it may be that originally it extended in a continued straight line to the street, but that it did, and so continued during Mrs. Stevens' twenty-eight years of occupancy, is not established by the defendant. Why the purchaser of the strip should have fenced in only a part of it, if he did, or why he should have fenced it in at all, is beyond ascertainment at this time—sixty years afterward. I would not venture an opinion as to where the fence was. I am not called upon to do that.

The decree which I shall advise may be safely rested on these grounds: Mrs. Mason, the complainant, concedes that the fence was from eighteen inches to two feet from the Stevens house. I shall accept the greater distance plus one and a half inches. Beyond that the defendant has not established adverse possession by a preponderance of the evidence; and I assume, upon the hypothesis that the fence was built at that point, that it was erected in a direct line to the apex; that Mrs. Stevens entered into possession in 1882, in good faith, believing that her lawful title extended to the point of the fence; and that such possession was actual and exclusive, adverse and hostile, visible and notorious, continued and uninterrupted for more than twenty years. *Foulke* v. *Bond, 41 N. J. Law 527.* The decree will settle the title to one-half of the strip in the defendant, the other half in the complainant.

No costs.