36 N.J. Super. 440 (1955)
116 A.2d 484
WILOMAY HOLDING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PENINSULA LAND CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 18, 1955.
Decided August 1, 1955.
*442 Before Judges CLAPP, WAESCHE and ARTASERSE.
Mr. Isadore Glauberman argued the cause for plaintiff-appellant (Mr. Edward A. Smarak, attorney).
Mr. Robert H. Schenck argued the cause for defendant-respondent (Messrs. Matthews and James, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The question presented in this action to quiet title is whether the plaintiff acquired title, through adverse possession, to a certain strip of land on a peninsula in Lake Hopatcong, lying north of a line marked X-Y on a map in evidence. The trial court found against the plaintiff on this question, and plaintiff appeals. It was conceded on the oral argument before us that plaintiff does not have good record title to the land in question. On the other hand there was proof below, to which no objection was taken, that defendant's record title is good.
The strip in question, referred to in the case as the "gore," runs over 1,000 feet along the northern part of the peninsula, broken at one point by a cove. It is not marked off in any way by a fence. Except at the cove, it lies just south of a certain ten-foot strip which skirts the shore allegedly (in another litigation, plaintiff claims this ten-foot strip has disappeared through erosion) and which is owned by a corporation not a party to this action. The gore comprises about an acre, about 1/22nd of the whole peninsula, and its width  i.e., the distance from the X-Y line to the ten-foot strip  varies from 120 to 2 feet.
Plaintiff purported to buy the peninsula in 1951 from persons who have been referred to as the heirs of Daniel Callaghan. It apparently was admitted below for the purposes of the action that through Daniel Callaghan  his title goes *443 back to 1884  plaintiff "has record title to the whole of the peninsula, with the exception of the" gore and the ten-foot strip.
To sustain a title through adverse possession, the claimant must establish possession of a certain character:
"actual and exclusive  adverse and hostile  visible or notorious  continued and uninterrupted." Foulke v. Bond, 41 N.J.L. 527, 545 (E. & A. 1879).
Moreover  in any event when he makes a claim (as plaintiff does here) as against the record owner  he has the burden of proving his case clearly and positively. Redmond v. New Jersey Historical Society, 132 N.J. Eq. 464, 474 (E. & A. 1942); Northern R. Co. v. Demarest, 94 N.J.L. 68, 72 (Sup. Ct. 1919); Mason v. Home Real Estate Co., 90 N.J. Eq. 455 (Ch. 1919); Shields v. Ivey, 52 N.J.L. 280, 282 (Sup. Ct. 1890); Baldwin v. Shannon, 43 N.J.L. 596, 603 (Sup. Ct. 1881); Rowland v. Updike, 28 N.J.L. 101 (Sup. Ct. 1859); Cornelius v. Giberson, 25 N.J.L. 1, 31 (Sup. Ct. 1855).
These principles being settled, the case, in this aspect of it, is largely a factual one, depending on whether the acts of Daniel Callaghan and those who claim under him can be said to demonstrate an actual, continuous and visible or notorious possession for the statutory period. We need not consider the matter of hostility dealt with in Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954).
There is some testimony that the whole peninsula was "always" farmed by Daniel Callaghan and his successors in interest, that "it was all plowed up at one time or another"; but the testimony was so vague and general in its tenor as not to meet the requisite standard of clarity and positiveness with respect to the gore itself. The evidence we have reference to, does not show precisely in what years  or for how many years  the land was cultivated or the extent or nature of the cultivation, or whether the gore itself was planted. Indeed the gore seems to have been (until apparently in *444 recent years when it was somewhat filled in) in considerable part a swamp. Also located thereon are some brush and a hedge row of large trees.
There was however one witness who was somewhat more specific as to the farming of the gore. He said that farming was "always" carried on on a patch of ground with dark soil on the north of the peninsula, which "in some places * * * comes right up to the lake." The witness, so far as his personal knowledge went, must have been referring to a period extending from sometime after 1909 until 1923  and possibly subsequently, but until what year we do not know. We can assume that if there was this farming on the gore as the witness said, then there may have been farming there for years before 1909. But this is all an assumption, and not clear and positive proof.
Nor does this witness leave us with a clear impression as to what portion of the gore was farmed. He may well have meant that the farming was carried on right up to the above-mentioned cove  that is, on land admittedly belonging to plaintiff lying outside of the gore. Moreover he did not explain how plowing could have been carried on right up to the lake through the "large trees along the shore line" which he testified to.
Witnesses testified to cows roaming over the gore, but during what years we do not know. Again we have no clear and positive proof.
Reliance is put by plaintiff also on the testimony as to certain bungalow and tent sites which have been located on or near the gore in recent years. But the findings of the lower court with respect thereto are hardly controverted by the plaintiff, and we need not repeat them here. Suffice it to say that such testimony as there is with respect to these sites is not favorable to plaintiff's position.
The only other proof of adverse possession relates to docks built on the lake north of the ten-foot strip. To gain access to them from the bungalows on plaintiff's property, one had to traverse the gore. We however need not stop to consider the various aspects of this matter. For one thing we do not know *445 how many, if any, of these docks were built more than 20 years before this action was started.
The acts, relied upon by plaintiff, all quite palpably fail to meet the standard of clear and positive proof.
Plaintiff puts much reliance on Yard v. Ocean Beach Association, 49 N.J. Eq. 306 (E. & A. 1892). In that case, the claimant showed color of title. As to the effect of color of title, see Foulke v. Bond, 41 N.J.L. 527, 543-551 (E. & A. 1879); Den ex dem. Saxton v. Hunt, 20 N.J.L. 487, 490 (Sup. Ct. 1845); Cobb v. Davenport, 32 N.J.L. 369, 385 (Sup. Ct. 1867); 3 Amer. Law of Property 819 (1952). As to what constitutes color of title, see Den ex dem. Saxton v. Hunt, supra; 3 Amer. Law of Property 785. But any principle of law operating in favor of one in possession under color of title or a defective paper title is of no aid to plaintiff here. So far as the proofs go here, the deed into Daniel Callaghan is so uninformative that it could not be said that he or his so-called heirs had paper title to the gore.
Besides in the Yard case (49 N.J. Eq., at page 310), it appeared "clearly" from the evidence that appropriate acts of dominion were exercised over the very land in dispute. The disputed parcel there was waste land lying between the upland and the ocean, covered by sedge grass and at times by the tides, making cultivation impracticable. But on it fences had been erected to the ocean, and there were other acts of ownership performed continuously, so far as practicable, for more than three-quarters of a century.
It may be conceded that to make out title, through adverse possession, with respect to lands so far as they are swampy or largely undeveloped, there need not be as extensive and as continuous control as with respect to improved lands. 3 Amer. Law of Property 766. And it may also be conceded arguendo that this is particularly true where the undeveloped property constitutes a small portion of a peninsula set off (as here) somewhat like an island, the rest of which belongs to claimant's predecessor in title. Even so, we conclude, there must be clear and positive proof establishing not only actual acts of ownership over the property *446 in dispute but also a certain frequency in the performance of those acts, sufficient to amount, in the eyes of the law, to a continuity of possession during the statutory period. Indeed the New Jersey cases require proof of such acts even though the claimant comes in under a paper title (which as above stated, the proofs do not establish here). Foulke v. Bond, 41 N.J.L. 527, 544, 547 (E. & A. 1879); Schmitt v. Traphagen, 73 N.J. Eq. 399, 402 (E. & A. 1908); Nugent v. Grassman, 91 N.J.L. 360, 363 (Sup. Ct. 1918).
Plaintiff lays some stress on the fact that in 1915 Daniel Callaghan, plaintiff's predecessor in title, and his wife deeded to one of defendant's predecessors in title the above-mentioned ten-foot strip. Defendant's predecessor had theretofore bought the gore; and the ten-foot strip, if it exists, lies in part within the gore and in part without it. (In 1939 defendant's predecessor conveyed the ten-foot strip to a corporation not a party here.) But no inference from this 1915 deed will help plaintiff's case; the deed of course could not establish clearly and positively actual and (to the extent required by law) continuous possession of the gore for the statutory period. And it is because of the deficiencies of the proof in these regards that we conclude plaintiff has not made out its case.
Only one other point needs to be mentioned. Plaintiff claims that the judgment below is void because of noncompliance with N.J.S.A. 2A:62-6. In an action to quiet title under the statute, where defendant's claims are valid, the statute calls for a judgment
"* * * establishing those claims and rendering them definite, so as to inform the complainant precisely what their character and extent in fact are." Fittichauer v. Metropolitan Fire Proofing Co., 70 N.J. Eq. 429, 436 (Ch. 1905); cf. Blatchford v. Conover, 40 N.J. Eq. 205, 218 (E. & A. 1885).
The sole issue in this case is as to the title to the gore; the gore constitutes "the affected lands" within the meaning of the statute cited. The trial court in its opinion somewhat indicates the location of these lands by reference to a surveyor's *447 map on which a line, designated in the evidence as the X-Y line, has been drawn with some care by the surveyor.
The judgment however merely provides that "judgment be entered in favor of the defendant * * * and against the plaintiff." It should, as a matter of form, have adjudged that the plaintiff has no interest in certain lands (describing them); and that in respect to said lands, so far as relates to any claim thereto by or on behalf of the plaintiff, the defendant has an estate in fee simple. See the judgment in Brady v. Carteret Realty Co., 82 N.J. Eq. 620, 621 (E. & A. 1914); Dickinson's Chancery Precedents 620, 622 (1894). However, even after the mandate goes down herein, the judgment could still be amended to include such a provision, if either party so desires. But no application was made below for a judgment in such form, and we see no basis whatever for reversal on this account. In fact plaintiff's counsel consented to the form of the judgment.
Affirmed.