111 N.J. Super. 89 (1970)
267 A.2d 549
KUTNER BUICK, INC., PLAINTIFF,
v.
JUNE STRELECKI, COMMISSIONER OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 29, 1970.
*92 Mr. Abraham Greenberg for plaintiff (Messrs. Greenberg, Shmerelson & Greenberg, attorneys).
Mr. George F. Kugler, Jr. Attorney General of New Jersey for defendant. (Mr. Remo M. Croce, Deputy Attorney General, of counsel).
WICK, J.S.C.
This case involves the construction and validity of N.J.S.A. 39:5-47.
The statute reads as follows:

39:5-47. Seizure and sale of stolen motor vehicles
The commissioner may authorize the seizure of a motor vehicle operated over the highways of his state when he has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances and may retain it in the name of the department until such time as the identity of ownership is established, whereupon he shall order the release of the motor vehicle to its owner.
After the expiration of ninety days from the date the motor vehicle came into the possession of the commissioner by seizure or otherwise, he shall sell it at public sale, upon notice of the sale being first published for the space of two weeks in one or more newspapers published and circulating in this state, and also by posting the notice in five public places in this state. The newspapers and places of posting shall be designated by the Commissioner. Upon the sale of the motor vehicle all claims for interest therein shall be forever barred and the proceeds realized therefrom shall become the sole property of the state, to be used as other moneys received under chapter 3 of this title (§ 39:3-1 et seq.)
Pursuant to this statute, the Department of Motor Vehicles seized two 1967 Cadillacs bearing serial numbers B7140840 and J7220527. Plaintiff brought this action initially to enjoin the sale of the vehicles, but since they had already been sold the action is now one for damages.
The facts are not contested and are as follows. Sometime prior to November 15, 1967 a 1967 Cadillac two-door hardtop coupe-de-ville, with vehicle identification number J7220527, was involved in an accident. The owner was paid the full value of the vehicle by his insurance company and *93 assigned his interest to it. Sometime prior to this, on November 15, 1967, the automobile was inspected by Camden Appraisal Board who determined that the cost to repair would be $6,343.14. The value of the car before the accident was between $4,675 and $5,550. The opinion of the expert who appraised the vehicle was that it could not be repaired.
The insurer put the vehicle up for sale at the car auction in Bordentown, New Jersey. On November 22, 1967 Nolan Truck Sales, Inc. bought it for $1,135 and received the ownership documents. On January 10, 1968 the New Jersey Division of Motor Vehicles issued a certificate of owership to Nolan for the car in question. Nolan sold the vehicle on February 12, 1968 to Joseph Taylor for $1,500. Taylor ran a body shop in Philadelphia and purchased wrecks. The chain of title is broken at this point until March 11, 1968, when a certificate of ownership was issued by the Commonwealth of Pennsylvania to Raymond Chalmers, a licensed used car dealer in Philadelphia, for a 1967 Cadillac sedan, serial number J7220527. Chalmers subsequently sold Kutner Buick, Inc. a 1967 used Cadillac in good condition with serial number J7220527 for $4,250. This vehicle was purchased by Gordon Whitehill, an employee of plaintiff with 12 to 14 years experience in buying automobiles. He testified that he examined the Pennsylvania certificate of ownership and determined it to be valid, and this is not disputed. He checked the serial numbers on the vehicle and even took a tracing of the vehicle identification number on the frame. Satisfied with his inspection, he paid the price which the court finds was the fair market price.
Plaintiff sold the vehicle to Crest Fine Cars, who sold it to Calvin Patterson. On November 27, 1968 Joseph M. Carroll of the National Auto Theft Bureau and Sgt. Donald Kessler of the New Jersey State Police inspected the vehicle at the request of Mr. Ryan of the FBI. Both men are experienced experts in identifying stolen vehicles. Their testimony was that the serial numbers on the left door lock post and the engine were original plates bearing number J7220527 *94 attached to the vehicle by sheet metal screws. However, to an expert eye with numbers stamped on the frame showed signs of tampering. The experts testified that the original serial number appeared to be ground off. They reached this conclusion by observing marks such as are left by a grind wheel on the frame where the number should have been. The experts then concluded that new numbers had been stamped where the old numbers had been ground off. They reached this conclusion by observing that some numbers were struck twice and some numbers were imprinted with less force than others. An original number stamped at the factory is struck by machine so that there can be no strikeovers or variations between digits.
A similar story is behind serial number B7140840. It was purchased initially by Drive It Yourself Co. of New Jersey, a Hertz licensee. On September 26, 1967 it was struck by a train and towed to Cooperson Brothers, Inc. in Camden. An employee of Cooperson with 45 years of experience in estimating the cost of repairs stated that the vehicle was a total loss and not worth repairing. On November 27, 1967 Drive It Yourself sold the wreck to Ace Auto Parts for $550. A certificate of ownership to a 1967 Cadillac bearing serial number B7140840 was issued by the State to it on November 28, 1967. The president of Ace testified that in his opinion the car could not be repaired.
Subsequently Ace sold the vehicle to Joseph Taylor Auto Body in Philadelphia for $800 and delivered the documents of ownership to it. The next appearance of the serial number was on a certificate of ownership issued to Raymond Chalmers on March 5, 1968 by the Commonwealth of Pennsylvania. A used 1967 Cadillac bearing this serial number and this certificate of ownership was purchased by Kutner Buick for $4,100. The court is satisfied from the testimony of Gordon Whitehill that the same procedure was followed as on J7220527 and that the $4,100 was the fair market value.
On March 19, 1968 the vehicle was sold for $4,400 to Stanley Auto Co., who sold it to Wilma Clifton.
*95 This vehicle was also inspected by Mr. Carroll and Sgt. Kessler, who reached the same conclusions as they did on J7220527.
From the testimony, there is no doubt in the court's mind that J7220527 and B7140840 were stolen vehicles. The automobiles originally bearing those numbers were wrecked beyond repair. The inference is too strong to even be questioned that someone took the serial plates off the door posts and engines and placed them on stolen cars. The numbers on the frame were ground off and restamped to match the plates. The certificate of title went with the plates and the stolen cars.
Plaintiff raises the possibility that a new frame was placed on the original cars after they were repaired and that the new frame was restamped to agree with the serial number on the body. No evidence was introduced that this is what in fact happened. N.J.S.A. 39:10-7 makes it illegal to change a vehicle identification number, while N.J.S.A. 39:10-16 permits a new certificate to be issued in case of the hypothetical plaintiff raises. If what plaintiff suggests was done, it follows that the legal rather than the illegal correction would have been used. The testimony also was quite clear that the cars could not be repaired, and there was no rebuttal of this testimony. The only reasonable explanation is that the vehicles plaintiff bought were stolen. The court so finds.
Although no testimony was offered by the State that all the evidence offered at trial was available to the Commissioner of Motor Vehicles, there is a strong inference that this would have been the case. With this last assumption, the requirement of N.J.S.A. 39:5-47 that the Commissioner have reason to believe that the motor vehicle had been stolen is fulfilled.
The court is also satisfied from the testimony of Gordon Whitehill that Kutner Buick, Inc. had no knowledge that the vehicles in question were stolen but that it relied upon the certificates of ownership and an inspection of the various *96 serial numbers on the cars. The State did not introduce any testimony that the tampering with the serial numbers would be noticeable to anyone other than an expert. The court is therefore free to believe that plaintiff not only did not know but could not reasonably have found out that the vehicles in question were stolen. There is also no doubt that the price paid by plaintiff was fair.
When defendant Commissioner repossessed the vehicles and subsequently resold them pursuant to the statute (it being impossible to determine the true owners), each buyer looked to his seller for restitution for breach of the seller's warranty of title. Plaintiff, having repaid its purchasers, brings this suit to recover its loss from the State. Since the requirements of N.J.S.A. 39:5-47 have been satisfied, plaintiff can only be successful by showing that the statute is unconstitutional as applied to the facts in this case.
The issue is whether the State may seize stolen motor vehicles from the possession of an innocent purchaser for value for its own use without just compensation.
The State can advance two theories to uphold the statute. The first is the principle of escheat. By escheat, the State takes title to property having no owner, 30A C.J.S. Escheat § 1a (1965), or an unknown owner. Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). The limit of the State's power to escheat is governed by N.J. Const. (1947), Art. 1, par. 20, which provides that "Private property shall not be taken for public use without just compensation." This is similar to U.S. Const. Amend V, "nor shall private property be taken for public use, without just compensation."
The rule has been established that "any doubts as to whether property is subject to escheat is resolved against the State." State v. Elizabethtown Water Co., 40 N.J. 280, 288 (1963); State v. United States Steel Corp., 12 N.J. 38, 47 (1953).
The issue here is whether the State may assert the claim of the unknown owner of a motor vehicle against a *97 bona fide purchaser under its powers of escheat. This court holds that it cannot.
The State contends that plaintiff as an innocent purchaser of a stolen vehicle holds no title. As a general proposition of law, that seems to be what the hornbooks and cases say. See National Retailers Mut. Ins. Co. v. Gambino, 1 N.J. Super. 627 (Law Div. 1948); 46 Am. Jur., Sales, § 459, n. 11, at 622 (1943); 7 Blashfield, Cyclopedia of Automobile Law and Practice 208 (1950).
Most of the cases that have laid down this rule have dealt with the rights of the original owner over a bona fide purchaser. National Retailers Mut. Ins. Co. v. Gambino, supra, states:
And if the wrongdoer sells the chattel to an innocent purchaser, the latter obtains no title from the trespasser because the wrongdoer had none to give. The owner may still retake it in its improved or changed state. Silsbury v. McCoon, 3 N.Y. 379 (1850). [at 629-630]
The concern in these cases has been to protect the innocent victim of theft. Although many cases speak in terms of no title in the purchaser, the better and more accurate rule of law seems to be that a bona fide purchaser of personal property taken tortiously or wrongfully, as by trespass or theft, does not acquire a title good against the true owner. 77 C.J.S. Sales § 295e (1952).
In those cases which have dealt with the rights of a bona fide purchaser of stolen motor vehicles vis-a-vis persons other than the owner, the law has emerged that a purchaser in good faith has the title and right to possession of stolen goods against all except the rightful owner. Savarese v. Hartford Fire Ins. Co., 99 N.J.L. 435 (E. & A. 1924); Norris v. Alliance Ins. Co., 1 Misc. 315, 123 A. 762 (Sup. Ct. 1923); Lindner v. Hartford Fire Ins. Co., 58 Misc.2d 86, 294 N.Y.S.2d 422 (Sup. Ct. 1968); Wacksman v. Harrell, 174 Ohio St. 338, 189 N.E.2d 146 (Sup. Ct. 1963); Barnett v. London Assur. Corp., 138 Wash. 673, 245 P. 3, 46 A.L.R. 526 (Sup. Ct. 1926); but cf. Giles v. Citizens *98 Ins. Co., 32 Ga. App. 207, 122 S.E. 890 (Ct App. 1924); Gurley v. Phoenix Ins. Co., 233 Miss. 58, 101 So.2d 101, 71 A.L.R.2d, 221 (Sup. Ct. 1958); Hessen v. Iowa Auto. Mut. Ins. Co., 195 Iowa 141, 190 N.W. 150, 30 A.L.R. 657 (Sup. Ct. 1922).
This rule seems to be the most reasonable and most equitable. The bona fide purchaser parts with his legal property as consideration for the stolen goods. It is fair to have him hold the goods in its stead. As opposed to any who claim the goods who have not paid the price, the equities weigh most strongly for the defrauded buyer. It is he who should be entitled to possession until one comes along who can show a greater interest or greater equities. By this rule, a good faith purchaser by his purchase acquires a property right in stolen goods which is constitutionally protected. Since this is so, the State cannot escheat the stolen vehicles because of the superior property interest of plaintiff.
Secondly, it is settled law that the State can obtain nothing more than the unknown owner could obtain. State v. Elizabethtown Water Co., supra; State by Parsons v. United States Steel Corp., 22 N.J. 341 (1956); State by Parsons v. Standard Oil Co., 5 N.J. 281 (1950), aff'd Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). There are certain defenses that a bona fide purchaser would have against the true owner which would extinguish the latter's rights in the vehicle. For example, N.J.S.A. 12A:2-403(2) gives a bona fide purchaser superior title over an owner who entrusted his goods to a merchant who deals in goods of that kind. Other examples may be found in 7 Blashfield, Cyclopedia of Automobile Law and Practice, § 4356 (1950), including perhaps the negligence of the original owner in allowing his vehicle to be stolen. The purchaser's right to these defenses which might establish his interest to be superior to the original owner are sufficient to vest him with a constitutionally protected property interest in the vehicle. *99 For this reason the State cannot escheat the property from plaintiff.
The doctrine which supports the validity of the statute is forfeiture.
A statutory forfeiture proceeding is in rem. It is the property which is proceeded against and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. Various Items of Personal Property v. U.S., 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1930); The Palmyra, 12 Wheat. 1, 6 L.Ed. 531 (1827); Spagnuolo v. Bonnet, 16 N.J. 546, 560 (1954); State v. Moriarty, 97 N.J. Super. 458 (Law Div. 1967), aff'd 102 N.J. Super. 579 (App. Div. 1968), aff'd Farley v. $168,400.97, 55 N.J. 31 (1969).
Statutes providing for the forfeiture of illicit goods or property used in connection with illegal activities have generally been held constitutional as against the objection of their being a deprivation of property for public use without compensation. See Various Items of Personal Property v. U.S., supra; United States v. One Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926); 37 C.J.S. Forfeitures § 4(a) (1943); 16A C.J.S. Constitutional Law § 645 (1956).
Although the cases are not always explicit as to why forfeitures are upheld, it would appear that their validity depends on their reasonable necessity to accomplish a legitimate purpose under the police power. See Lopez v. N.J. Bell Telephone Co., 51 N.J. 362 (1968); 16A C.J.S. Constitutional Law § 645 (1956).
Within New Jersey, statutes providing for forfeiture have been applied to contraband such as gambling paraphernalia (N.J.S.A. 2A:152-6 et seq.), Farley v. $168,400.97, 55 N.J. 31 (1969); Spagnuolo v. Bonnet, supra; personal property on the premises on which an unregistered still is found (N.J.S.A. 33:2-1 et seq.); Patrick v. Driscoll, 132 N.J.L. 478 (Sup. Ct. 1945); and vehicles used illegally to transport narcotics (N.J.S.A. 24:18-38.1 to 38.3), *100 Ben Ali v. Towe, 30 N.J. Super. 19 (App. Div. 1954) (although held not applicable to the facts in that case); contra, Commercial Credit Corp. v. Congleton, 21 N.J. Super. 88 (Cty. Ct. 1952).
This court can take judicial notice of the problem of stolen vehicles within this State as well as across the country. It thus acknowledges the Legislature's right under the police power to pass such statutes as it deems necessary to solve or alleviate the problem. It is clear from N.J.S.A. 39:10-1 et seq. that the whole scheme of motor vehicle certificates is directed to prevent the transfer of stolen vehicles. General Motors Acceptance Corp. v. Smith, 101 N.J.L. 154 (E. & A. 1924). See particularly, N.J.S.A. 39:10-3.
N.J.S.A. 30:10-7 is directed at preventing the mode of theft used in this case by requiring that
Every motor vehicle and nonconventional type motor vehicle shall have and contain a manufacturer's vehicle identification number, which number shall not be obliterated, erased, mutilated, removed or missing.
Read in this context, N.J.S.A. 39:5-47 is a penalty to enforce the provisions of N.J.S.A. 39:10-1 et seq., and is clearly constitutional as applied to the thief or non-bona fide purchaser from a thief.
The issue in this case is whether the forfeiture may also work against a bona fide purchaser for value.
Forfeitures have been upheld against innocent owners or lienors who entrust their property to one who uses it to commit an illegal act. Van Oster v. Kansas, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926).
Confiscations have been held valid against the true owner even when he was ignorant of its use for illegal purposes, on the reasoning that the property was the offender and the culpability of the owner was not in question. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1920); United States v. The Malek Adhel, *101 2 How. (U.S.) 210, 11 L.Ed. 239 (1844); Farley v. $168,400.97, 55 N.J. 31, 38 (1969); State v. One 1960 Mercury Station Wagon, 5 Conn. Cir. 1, 240 A.2d 99 (Cir. Ct. App. Div. 1968). See generally, 36 Am. Jur.2d, Forfeitures and Penalties, § 18, 19 (1968), Annotation, "State Liquor Laws  Vehicle Forfeitures," 14 A.L.R.3d § 3(a) (1967); Annotation, "Forfeiture by innocent vendor of article sold conditionally and used by vendee in violation of law," 2 A.L.R. 1596 (1919).
New Jersey ascribed to this rule in Spagnuola v. Bonnet, 16 N.J. 546 (1954), saying:
The established rule is that the forfeiture becomes absolute at the commission of the prohibited acts and the title from that moment vests in the state or government in all cases where the statute in terms denounces the forfeiture of the property as a penalty for a violation of the law, without giving any alternative remedy or providing any substitutes for forfeiture or allowing any exceptions to its enforcement, and that in all such cases it is not in the power of the offender or the former owner to defeat the forfeiture by any subsequent transfer of the property, even as to a bona fide purchaser for value, without notice of the wrongful acts done or committed by the former owner. The forfeiture is considered as directed against the thing itself, not merely the possessor's interest in it [at 560]
This passage was quoted with approval in Farley v. $168,400.97, supra.
Thus the law has been too clearly written to say that the Legislature may not do that which defendant urges. The statute itself is sufficiently broad to include within it the forfeiture of the interest of a bona fide purchaser. This court doubts that the 1921 Legislature intended the statute to reach such a harsh result, but in the absence of any legislative intent this court must enforce the statute according to its plain meaning. But cf. Peisch v. Ware, and United States v. Cargo of the Ship Favourite, 4 Cranch (U.S.) 347, 364-365, 2 L.Ed. 643, 548 (1808).
The last issue is whether the statute satisfies procedural due process.
*102 Farley v. $168,400.97, 55 N.J. 31 (1969), put this issue to rest by commenting:
We note that a forfeiture statute need not provide for procedural due process. In this State, the judiciary itself has the constitutional power to provide for the demand of procedural due process, whatever they may be. State v. American-Hawaiian Steamship Co., 29 N.J. Super. 116, 128-129 (Ch. Div. 1953). [at 43, n. 5]
Procedural due process would seem to require notice to those interested in the property that there has been a seizure and to offer them an opportunity to be heard at a hearing. See Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914 (1876); State v. Moriarty, supra; State v. American-Hawaiian Steamship Co., 29 N.J. Super. 116 (Ch. Div. 1953); Commercial Credit Corp. v. Congleton, 21 N.J. Super. 88 (Cty. Ct. 1952); 37 C.J.S. Forfeitures § 5(b) (1943).
Since N.J.S.A. 39:5-47 is devoid of provisions for either, this court, following Farley, will interpret the statute as requiring the State to give notice to all parties having an interest in the seized motor vehicle. A hearing must then be held by the Commissioner or in the courts, at which time the State must prove that the vehicle in question has been stolen, with interested parties having the opportunity to present opposing evidence and cross-examine the State's witnesses. Only after a decision in favor of the State and after appeal or the time for appeal has expired does the State have the right to dispose of the vehicle pursuant to the statute. Since the proceedings before this court complied with procedural due process and the State proved to the court's satisfaction that the vehicles were stolen, there is no alternative except to confirm the Commissioner's action.
Although the court considers the forfeiture to work a hardship, it does not consider the judicial system as the proper branch of government to grant remission. N.J. *103 Const. (1947), Art. V, § 2, par. 1, and N.J.S.A. 2A:167-1.
Plaintiff's complaint must be dismissed and judgment will be entered accordingly.