170 N.J. Super. 75 (1979)
405 A.2d 840
GEORGIA O'KEEFFE, PLAINTIFF-APPELLANT,
v.
BARRY SNYDER, D/B/A PRINCETON GALLERY OF FINE ART, DEFENDANT-RESPONDENT,
v.
ULRICH A. FRANK, THIRD-PARTY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1979.
Decided July 27, 1979.
*78 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Roger A. Lowenstein argued the cause for appellant (Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys).
Mr. David A. Friedman argued the cause for respondent Barry Snyder, d/b/a Princeton Gallery of Fine Art (Messrs. Ridolfi and Friedman, attorneys).
Mr. Thomas C. Jamieson, Jr. argued the cause for Third Party respondent Ulrich A. Frank (Messrs. Jamieson, McCardell, Moore, Peskin and Spicer, attorneys).
The opinion of the court was delivered by MORGAN, J.A.D.
Three small oil paintings by plaintiff Georgia O'Keeffe, a living American artist of worldwide renown, were stolen from a New York gallery owned by her husband, Alfred Stieglitz, in 1946 by some unknown thief. Their whereabouts remained unknown until March 1976, some 30 years after the theft, when *79 plaintiff discovered them in the possession of defendant Barry Snyder, d/b/a Princeton Gallery of Fine Art, who had purchased them from third party defendant Ulrich A. Frank for $35,000. Plaintiff commenced the present replevin action on May 18, 1976 in an attempt to regain their possession. She appeals from summary judgment entered in defendant's favor adjudging her claim barred by the six-year period of limitations applicable to replevin suits. N.J.S.A. 2A:14-1.
The essential facts are relatively free from dispute despite dimmed memories and the death of a prior possessor which has foreclosed knowledge of the date when, and circumstances in which, the paintings passed from the thief to the subsequent possessors. They have been derived from answers to interrogatories and those given by way of oral deposition.
The theft was not reported to the police, plaintiff viewing such official efforts to locate the paintings as being futile. "I was certain [they] could not or would not do anything about what I'm sure they would have thought was a minor theft." Nor did she confront a man by the name of Estrick, the person she suspected of being the thief. Instead, she hoped that the paintings would be found as were others stolen from the gallery at about the same time. Word of the theft was, however, given to many persons within her artistic circle.
Plaintiff's husband Stieglitz died during the summer of 1946 soon after the theft of the paintings and plaintiff became involved in the settling of his estate over the next three years. As she recited in her affidavit, "I had the burdensome job of settling his estate and could not really pursue the stolen paintings beyond mentioning it to people who were around  the artists  the Stieglitz circle."
In February 1947 one Doris Bry began working as plaintiff's secretary. She and plaintiff discussed the stolen paintings many times over the course of the years although neither reported the loss because plaintiff was convinced such efforts would be unavailing. Eventually, however, in 1972, years before the sale *80 to defendant Snyder, the paintings were listed as stolen with the Art Dealers Association which maintained a registry of stolen paintings.[1]
At some unspecified date and in some unspecified manner after the 1946 theft, the paintings came into possession of third-party defendant's father, Dr. Ulrich Frank, an art collector. According to his son, Ulrich A. Frank, the paintings were displayed "prominently" on the walls of the residences where his father lived during the period of his possession.[2] Information as to Dr. Frank's acquisition of these paintings will probably never be known because he died in 1968 before these facts assumed importance in litigation. Third-party defendant Frank acquired the paintings in February 1965 by gift from his mother and father. For the most part, the paintings remained in his homes on display for the next ten years, during part of which period he lived in Yardley, Pennsylvania. In December 1968 the paintings were displayed at a one-day art exhibit at the Jewish Community Center in Trenton, the owner being there listed as Anonymous. In 1973 all three paintings were consigned to the Danenberg Gallery in New York for sale. Finding no purchaser for them, the Gallery returned them to Frank. In March 1974 they were consigned to defendant Snyder for sale and in March 1975 Snyder purchased the three paintings for $35,000.
O'Keeffe first learned of the whereabouts of the paintings from an associate in New York who informed her that the paintings had been offered for sale to the Andrew Crispo Gallery in New York, presumably when under consignment to the Danenberg Gallery. From this information plaintiff was *81 able to locate the paintings in Snyder's Princeton gallery in March 1976. Her demand for the paintings was rejected and on May 18, 1976 she filed the present suit. Defendant concedes that plaintiff lacked knowledge as to the whereabouts of the paintings between February 1946 and February 1976.
In her complaint plaintiff simply sought possession of the paintings which she alleged to have been stolen from her. Defendant's amended answer denied the essential allegations of the complaint and set out, as separate defenses, that (1) he was the owner of the paintings, (2) plaintiff's claim was barred by laches, (3) plaintiff's claim was barred by limitation, and (4) he held valid title by adverse possession. The record contains no responsive pleadings by third-party defendant Frank and plaintiff has filed no subsequent amendment to the complaint asserting any cause of action against him. Following discovery by way of interrogatories and oral depositions, plaintiff and defendant filed cross-motions for summary judgment.
In an oral opinion granting defendant's motion and denying plaintiff's, the trial judge held that "defendant has simply failed to establish several of the basic requirements of adverse possession." He found that defendant's possession and that of those preceding him and upon which he relies was not a "continual possession which was visible, open and notorious so as to put the plaintiff directly or impliedly on notice of the defendant's possession." Nonetheless, he held plaintiff's suit barred by passage of the statutory six-year period of time (N.J.S.A. 2A:14-1), holding that her cause of action accrued at the time of the original theft in 1946. The indulgence of the discovery rule was denied plaintiff because "she failed to confront anyone or take any action at that time [at the time of the theft] against anyone, including a possible thief named Estrick. She simply did nothing." Plaintiff appeals.
We start our consideration of this interesting case with an attempt to focus upon the narrow issue before us. Defendant *82 virtually concedes that plaintiff lost possession of the paintings by theft. Indeed, he has no other choice given plaintiff's uncontradicted testimony, the affidavits of others that record conversations, antedating by years the present controversy, concerning this theft and the whereabouts of the stolen paintings, and the listing of the paintings as stolen in 1972 in a registry of stolen art years before defendant acquired title. Defendant also concedes the indisputable proposition of law that a thief acquires no title to the property stolen by him and can pass none to others regardless of their good faith and ignorance of the theft. Joseph v. Lesnevich, 56 N.J. Super. 340, 346 (App.Div. 1959); Ashton v. Allen, 70 N.J.L. 117, 119 (Sup.Ct. 1903); Restatement, Torts 2d, § 229, comment (e) at 448 (1965); Prosser, Torts (4 ed. 1971), § 15 at 87. It follows, then, that defendant must concede plaintiff's title to the paintings in question subject to her challenged right to assert that title and claim the paintings. If defendant is to retain the paintings, it is only as a result of the passage of time.
The time within which a suit in replevin must be brought is specified in N.J.S.A. 2A:14-1 as being within six years of the date on which the cause of action accrues. The essential question posed for resolution by the trial court and us is when did plaintiff's cause of action accrue. Did the six-year period for suit commence running with the 1946 theft? Did it start running anew with each subsequent transfer of the paintings as against each successive new possessor? Does plaintiff's ignorance concerning the whereabouts of the paintings and in whose possession they were at any given time affect the running of the statutory period? Does the good faith or absence of it on the part of those who acquire possession through the thief affect the manner in which the statutory time period runs? How, if at all, does the doctrine of adverse possession affect the running of the statutory period? These are the areas of inquiry about which we must be concerned.
*83 Although authority concerning limitations of actions to recover possession of chattels is not plentiful, we do not write on a clean slate. The controlling authority of Redmond v. New Jersey Historical Society, 132 N.J. Eq. 464, 473-476 (E. & A. 1942), held principles of adverse possession, traditionally applicable to real property, to apply as well to personalty.
Dean Ames, in fully considering this question, contrasts the Roman and the English laws on the subject. He persuasively demonstrates, by a wealth of authorities, that other courts, when considering personalty, have consistently applied the same rules of law concerning the necessary requisites of adverse possession that they applied when considering the question of adverse possession of realty. The basis for this like application of principle is, in our opinion, sound and just. We adopt it. [at 473]
This being a decision of our then court of last resort, we are permitted to do no less. Defendant, who raised the issue as a defense, agrees, as does plaintiff who prevailed thereon, as a matter of fact, in the trial court. See also, Lightfoot v. Davis, 198 N.Y. 261, 91 N.E. 582 (Cr.App. 1910); 3 American Law of Property, § 15.16 at 834-838 (1952).
Defendant does not challenge the summary nature of the ruling on the adverse possession issue by referring to unresolved issues of fact.[3] Rather, he contends that the asserted incorrect resolution of this issue stemmed from an error of law. Our own review of the record convinces us that the issue was properly susceptible of summary disposition.
One claiming title to property by reason of adverse possession must establish possession for the statutory period which is "actual and exclusive  adverse and hostile  visible or notorious  continued and uninterrupted." Foulke v. Bond, 41 N.J.L. 527, 545 (E. & A. 1879). With minor changes, not here *84 relevant (see Mannillo v. Gorski, 54 N.J. 378 (1969)), those factual requisites of adverse possession have remained unchanged to the present. Moreover, established principles squarely place the burden of proving each of these essential elements of adverse possession on the one claiming title on that basis, and such burden is satisfied only by evidence of a clear and positive nature. Wilomay Holding Co. v. Peninsula Land Co., 36 N.J. Super. 440, 443 (App.Div. 1955); Redmond v. New Jersey Historical Society, supra 132 N.J. Eq. at 473-474.
Defendant's failure of proof, according to the trial judge, centered on the requirements of visibility and notoriety of the possession. Although not thoroughly discussed, the trial judge apparently viewed the intramural residential display of the paintings and a one-day display at a local art exhibit as insufficient to establish a visible and notorious possession. The conclusion reached is in our view indisputably correct in light of the essential purpose for those requirements.
The requirement of the eight adjectives noted above [actual and exclusive, visible and notorious, continued and interrupted, hostile and adverse] * * * is consequently designed to flag to the true owner the necessity of taking timely legal action * * *. [Brewer v. Porch, 98 N.J. Super. 583, 588 (App.Div. 1968), rev'd on other grounds, 53 N.J. 167 (1969)].
Hence, title by adverse possession may never be acquired by mere possession however long continued "which is not such as will give unmistakable notice of the nature of the occupant's claim." Mannillo v. Gorski, 54 N.J. at 388; 5 Thompson, Real Property, § 2546 at 619-624 (1979). Display in one's home provides to the true owner no more notice of the possessor's claim or warning of the need for timely legal action than would its retention in a closet. Neither mode of possession is such as to afford the true owner a realistic opportunity to regain possession by legal action.
*85 Defendant does not seem to disagree. Rather, he contends that Joseph v. Lesnevich, 56 N.J. Super. at 355, placed a "realistic limitation" on the character of the possession required for adverse possession of chattels when it required that the bonds, title to which was in issue in that case, be held "as openly and notoriously as the nature of the property would permit * *." Accordingly, defendant contends, the paintings were possessed as openly and visibly as their nature permits, and that his title by adverse possession was established.
We do not so read Joseph v. Lesnevich, which did not, except incidentally in connection with "tacking," apply adverse possession as a means of barring plaintiff's action. Although the court did use the quoted words, it did so only in explanation of its ruling that defendants therein did not fraudulently conceal from plaintiff the latter's cause of action, thereby negativing that basis for tolling the running of the period of limitation. Use of the quoted phrase was not, as we read the opinion, an attempt to redefine the meaning of the visibility and notoriety requirements for adverse possession traditionally applied in realty cases for use in connection with adverse possession of chattels.
Moreover, we reject the modification in the meaning of visible and notorious possession defendant suggests be applied to chattels as a total defeat of the primary purposes of such requirements and as essentially inconsistent with recent compromises in the law's policy of repose, represented by acceptance of the so-called "discovery rule," to accommodate the just needs of claimants who would otherwise be deprived of all practical opportunity to assert their rights. See Fernandi v. Strully, 35 N.J. 434 (1961), which expressly overruled Weinstein v. Blanchard, 109 N.J.L. 332 (E. & A. 1932), upon which Joseph v. Lesnevich, supra, so strongly relied. In our view, if a display of the chattel is not such as to give notice to the true owner of the chattel's whereabouts, the latter's claim therefor cannot be barred; our adoption of the "discovery rule," applicable in other *86 contexts, demonstrates our rejection of the notion that one can be barred from asserting a right before he was afforded a real opportunity to assert it.
We fully recognize that by adoption of this view, applying all of the requirements for the adverse possession of land to chattels, we are in many, if not in most, cases foreclosing any real opportunity to acquire adverse title to stolen personalty. Jewelry, for instance, often the subject of theft, is not capable of museum display, except in extraordinary circumstances and, being small and designed primarily for personal wear, does not lend itself to the kind of display that would call an owner's attention to its possessor's potential adverse claim. Clearly, in such a case, title to jewelry stolen in California and subjected to country club display on the person of an innocent purchaser in New Jersey cannot vest title by adverse possession in the latter because the true owner in California was denied a fair opportunity of regaining title. To hold otherwise would reject reality in favor of the fiction that the character of the possession has been such as to place the true owner on notice of the need for prompt legal action. Such, however, are the difficulties inherent in applying to chattels principles of adverse possession developed with respect to land. No owner of land can be deprived of knowledge of where his land is. If he lacks such knowledge, it is only because he lacks knowledge of his ownership, not of the land's location, ignorance entirely independent of and not resulting from a trespass or the action of a person from whom the defendant claims. Many chattels are, of course, small and even when openly held may not give notice of claimant's adverse possession to the true owner. In many cases both the owner and the possessor are equally innocent; one must bear the loss. The question is, and always has been, who of these two innocents must bear the loss? Where adverse possession is concerned, the law favors the owner, at least where he has been deprived of opportunity to defend his title, by the imposition of the several requirements to a title by adverse possession, all of which must *87 be proved by clear and convincing evidence by the adverse claimant. We merely give effect to that policy in applying such law to personalty.
In this case the paintings were very small ones. They were stolen in New York, were thereafter kept out of artistic circulation in the major metropolitan galleries and museums, being displayed only on the walls of the several residences of their successive possessors. We assume that defendant and his predecessors lacked the intention to conceal them. The effect, however, on plaintiff's opportunity to recover them was the same as if they had had that intention. She could not have filed suit in New Jersey or elsewhere. In point of fact, we now know that they were kept for a time in Yardley, Pennsylvania, and thereafter in Princeton, N.J. Plaintiff, living in the far West, could not have known that. And, significantly, once they did appear on the New York art scene, when offered for sale to a New York gallery, plaintiff learned of their whereabouts and the present litigation was commenced. In our view, the trial judge's conclusion that defendant failed to meet his burden of proving that the paintings were possessed in an open, visible and notorious manner was entirely justified.
It yet remains to consider the legal significance of that conclusion. The trial judge apparently viewed as separate the questions of limitation and adverse possession, holding that although title by adverse possession had not been established, plaintiff's claim was nonetheless barred by limitation, the six-year period having commenced running with the theft in 1946. We view these two issues as being the same, and hence reach the contrary result.
With respect to property, real or personal, the bar by limitations extinguishes not only the remedy afforded to recover the property, but the right thereto as well. Indeed, the only vice to the title of the person in possession of such property is the right of the true owner to assert his own title. Once that vice is removed by passage of time, the prescriptive right *88 obtained by the possessor entitles him to pass his own good title to others, including the owner. Indeed, once title to adverse possession vests, the true owner can only regain title by purchase, gift or by himself proving the requisites of an adverse possession. "And it is as true of chattels as of land that a prescriptive title is as effective for all purposes as a title by grant." Ames, "The Disseisin of Chattels," 3 Harv.L.Rev. 317, 321 (1889-90). The "perpetual injunction" against enforcement of the true owner's right to his property virtually destroys that right. Id. This concept received express recognition in Rowe v. Bonneau-Jeter Hardware Co., 245 Ala. 326, 16 So.2d 689, 694, 158 A.L.R. 1266 (Sup.Ct. 1943), in the following terms:
Although as a general rule the statute of limitations operates only on the remedy, not on the right, as to the recovery of property it operates as to both. * * * So that in such suits the statute of limitations serves to cut the plaintiff off from the enforcement of his right of recovery by vesting such right in the respondent by adverse possession. As a defense to such a suit the statute of limitations and adverse possession are inseparable.
See also, 51 Am.Jur.2d, Limitation of Actions, § 22 at 606. Dean Ames reached the same conclusion in rejecting the view that as to property, statutes of limitation bar only remedies, not rights: "An immortal right to bring an eternally prohibited action is a metaphysical subtlety that the present writer cannot pretend to understand." Ames, supra at 319.
Although not expressly enunciated, Redmond v. New Jersey Historical Society, supra, was decided on that basis. In that case, involving the attempted recovery of a valuable painting from the defendant society, the court held that because the possession was not adverse, plaintiff's claim was not barred even though the Society had possession thereof for 50 years. That Redmond viewed the defenses of limitations and adverse possession as but one defense is disclosed in the language of its holding:

*89 Its [Society's] possession was not "adversary." On the contrary, its possession, in our opinion, was merely "permissive" however otherwise presently characterized by either party, and, therefore, no claim of "adverse possession" can be successfully maintained by the Society. * * * We so hold. The statute of limitations did not bar complainants' right of recovery. [132 N.J. Eq. at 475][4]
Hence, actions for the recovery of property, real or personal, of the character required by the law of adverse possession, has persisted throughout the statutory period of limitations. With respect to real property, that period is 20 or 30 years. With respect to personal property, that period is six years. In both cases, however, the property must be possessed for the required period in the required manner. If one of the essential ingredients to adverse possession is missing, the claim for the property is simply not barred.
In this connection it should be observed that neither the statutes of limitation barring rights of entry into real estate nor the statute specifying the period within which suits to recover personal property must be brought recites the requirements for adverse possession. Both types of statutes are essentially couched in terms of limitation similar to the statutes barring personal injury claims. Nonetheless, all judicial authority construing such enactments read into them the essential requirements of adverse possession. See DeBow v. Hatfield, 35 N.J. Super. 291 (App.Div. 1955), certif. den. 19 N.J. 327 (1955). Where such elements are not proved, the claim for the property is not barred. Predham v. Holfester, 32 N.J. Super. 419 (App.Div. *90 1954). When the trial judge rejected defendant's claim of title to the paintings by adverse possession, he necessarily disposed of the defense of limitation as well.
Hence, by reason of Redmond, supra, and its necessary implications which we have attempted to explore herein, the elements of adverse possession have become part and parcel of the statute of limitations governing replevin actions. Where the elements, or any of them, are absent, the claim is not barred whenever the right may have accrued, or however long the converter's possession may have persisted, as has traditionally been the rule with respect to real property. As applied to the present case, the failure of defendant to establish that his and his predecessors' possession was sufficiently visible and notorious necessarily required not only that his defense of adverse possession be rejected, but the defense of limitation as well. They were, in truth, the same defense.
In direct answer to the questions posed at the outset of this opinion, a cause of action for replevin accrues, in the sense that the statutory time in which suit must be brought starts runnings, when the possession by the defendant, or by those claiming through him, assumes the characteristic elements of adverse possession. See 5 Thompson, Real Property, § 2552 at 660 (1979). Although a theoretical cause of action may exist before that time, the statutory period does not run against it. Once it starts running, it continues against subsequent possessors possessing the chattel in the same way; it does not start running anew with each subsequent conversion. Joseph v. Lesnevich, supra. Plaintiff's ignorance of the whereabouts of his property does not affect the running of the statute if the possession has the required openness and notoriety; where possession is held clearly and unequivocally, knowledge of the true owner will be presumed. 5 Thompson, Real Property, § 2546 at 619 (1979). The good faith of the possessors who nonetheless fail to possess the chattel openly and notoriously has no effect *91 on the running of the statutory period. Finally, the defenses of adverse possession and limitation are the same on the theory that the law refuses to recognize a title it will not protect. 3 American Law of Property, § 15.16 at 834 (1952).
In our view, the result reached is the just one given the difficult circumstances of this case. Plaintiff and defendant are assumed to be innocent parties. As to plaintiff the trial judge found, with ample justification, that the manner in which the successive possessors of the paintings held them failed to afford her adequate opportunity to take legal action to protect her interest in them. There is no question but that she is their owner. She should not be deprived of her property without having been afforded such an opportunity. That she did not report the theft to the police in 1946 is beside the point. She may well have been right that such an effort would have proved fruitless. The suspected thief may have been proved entirely innocent. Thirty years later we cannot know one way or the other. In any event, she cannot be deprived of her property on such remote speculation. Moreover, her lack of action did not, as the trial judge suggested it did, deprive defendant or his predecessors of the opportunity of proving their title. Clearly, she has title, and defendants have never seriously asserted otherwise. Had she been successful in earlier recovering her paintings, the result would have been that third-party defendant would never have enjoyed their possession for so many years without paying anything therefor. Although there doubtless will be cases where an innocent converter will be forced to take a substantial loss as a result of our holding, this case does not appear to be one of them.
Moreover, defendant Snyder was not without means of self-protection. He was not a novice in dealing with art works. He purchased the paintings without provenance. He was thus aware of the uncertain history of the paintings' ownership. The artist, however, is alive and it was always open to him to check *92 with her as to their authenticity and the legitimacy of his purchase. He elected to take his chances with this result.
Because we have detected no real dispute concerning the larcenous origin of defendant's possession, and our independent review of his record convinces us of the absence of any genuine controversy concerning that fact, we see no obstacle to entry of a judgment for return of the paintings to plaintiff. All that remains to be tried is the third-party claim wherein defendant seeks to recover from third-party defendant the monies paid for the paintings.
The judgment is reversed, judgment is entered for plaintiff, and the case remanded to the trial court for further proceedings consistent with this opinion.
FRITZ, P.J.A.D. (dissenting).
I agree wholly with the majority that the result below was wrong and that the judgment entered thereon must be reversed. But the basis upon which I would found that conclusion is vastly different from that upon which they agree. One of the consequences of this disparity in our thinking is that I am not prepared to enter judgment for plaintiff but simply to say that it is entirely possible plaintiff is not precluded from her remedy by the statute of limitations and to return the matter for different proceedings from the limited ones the majority has ordered. Accordingly, I respectfully dissent.
The principal disagreement I have with the majority springs from my conviction that the statutory bar of limitations found in N.J.S.A. 2A:14-1 was intended to do no more with respect to the asportation of chattels than foreclose a remedy in appropriate circumstances. It follows that I must disagree as well with an identity, espoused by the majority, between the statute of limitations dealing with personal property and the rule of adverse possession, and with their statement that "With respect to property, real or personal, the bar by limitations extinguishes not only the remedy afforded to recover the property, but the right thereto as well."
*93 Supportive of my conclusion, to my way of thinking, is the vast difference in language between that statute and N.J.S.A. 2A:14-6 having to do with real property and from whence springs our adverse possession rule relating to land. Section 1 expressly requires that "[e]very action at law * * * for replevin * * * shall be commenced within 6 years next after the cause of * * * action shall have accrued," and nothing more. Section 6, on the other hand, explicitly and precisely directs that unless entry upon real estate by the right or title owner is made within 20 years, that right or title shall "be barred * * * thereafter." In view of this I must except also to the observation of the majority that "[b]oth types of statutes are essentially couched in terms of limitation similar to the statutes barring personal injury claims."[1] As is the case with N.J.S.A. 2A:14-1, the personal injury limitation statute speaks only in terms of a time limitation for commencement of the action. Couched in wholly different language, N.J.S.A. 2A:14-6 legislates in terms of a loss of the right.
It is clear beyond the need for citation, as the majority points out, that adverse possession with respect to land, springing from the operation of § 6, divests the owner of title. In fact, the statute says so. I think that is not so with regard to personal property, not only because the statute does not dictate that result, but also because in the absence of statutory divestment, our law strives mightily to protect title. We know that a thief acquires no title by a wrongful taking and cannot convey title to personalty. Even a bona fide purchaser of personal property from the thief does not acquire a good title as against the owner. Kutner Buick, Inc. v. Strelecki, 111 N.J. Super. 89, 97 (Ch.Div. 1970). Justice (then Judge) Proctor has characterized *94 possession by a thief as "a continuing wrong." National Retailers Mutual Ins. Co. v. Gambino, 1 N.J. Super. 627, 629 (Law Div. 1948). Acquisition of personal property by a criminal act generally prevents a conferring of good title even to a bona fide purchaser. 67 Am.Jur.2d, Sales, § 257 at 391. The Uniform Commercial Code provides that a purchaser of goods acquires only the "title which his transferor had or had power to transfer," N.J.S.A. 12A:2-403, which in the case of a thief is none.[2]
As ancient and respected an authority as Sir William Blackstone tells us the compelling and, it seems to me, eternal reasons for this, with logic as pure today as it was then:
* * * [W]hen I once have gained a rightful possession of any goods or chattels, either by a just occupancy or by a legal transfer, whoever either by fraud or force dispossess me of them, is guilty of a transgression against the law of society, which is a kind of secondary law of nature. For there must be an end of all social commerce between man and man, unless private possessions be secured from unjust invasions: and, if an acquisition of goods by either force or fraud were allowed to be a sufficient title, all property would soon be confined to the most strong, or the most cunning; and the weak and simple-minded part of mankind (which is by far the most numerous division) could never be secure of their possessions. [3 Blackstone, Commentaries, [*] 145]
I am satisfied that if an owner were able to recover possession of his personal property from a thief by peaceable self-help, even though it was long beyond six years following the theft, the thief should have no cause of action for the return of the chattels. Because of affirmative legislative commitment by statute such cannot be said of a thief who "steals" land by *95 virtue of 20-year possession and invocation of the doctrine of adverse possession. It is well enough to say, as does the majority, that we will not declare a right for which there is no remedy. I think we ought not transgress on that which may well be legislative prerogative to say that what that really means is where there is no remedy at law.
I am also convinced that the basic and substantial differences between realty and personalty, not the least of which is the immovability of realty and its constant availability to public view  qualities hardly ever present with respect to personalty  raise insurmountable barriers to the intelligent, wholesale and strict application to personalty of the doctrine of adverse possession as we have applied it to real property. It is notable that even Redmond v. New Jersey Historical Society, 132 N.J. Eq. 464 (E. & A. 1942), does not equate adverse possession of realty with that of chattels. Rather it holds for a "like application of principle." (At 474.) Even this, I think, is not sound if it imposes a judge-made conveyance of title in an area where the Legislature has clearly  by contrast of the language in § 1 with that of § 6  opted otherwise. The harm is aggravated by our lip service to the protection of title to chattels, as above. To the extent that Dean Ames' proclamation of 90 years ago, quoted by the majority, is thought to represent the weight of present authority, it is difficult to reconcile it with the frequently demonstrated proposition that, absent statute, a thief can never secure good title short of the owner's grant.
But I agree wholly with the majority that we are not free to decide differently from our court of last resort, In re Education Ass'n of Passaic, Inc., 117 N.J. Super. 255 (App.Div. 1971), certif. den. 60 N.J. 198 (1972), and I must yield to this superior precedent.
This is not to say that recognition of the application to personalty of a rule of adverse possession requires that this *96 judge-made doctrine be cloned to the statute of limitations. I see no reason why we should not instead gear it to the title-defeating statute which was the progenitor of the doctrine (N.J.S.A. 2A:14-6) and refuse to lend our aid to thieves and their successors for any period of time less than that chosen to benefit squatters on land. The Legislature chose six years in N.J.S.A. 2A:14-1. But they did not choose to vest title in other than an owner. If we do that as judges  as it would appear that both Dean Ames and the Redmond court would do  what is there that binds us to the legislative term?
My argument with the majority is only with respect to its superimposition of the doctrine of adverse possession upon the statute. Were it not for my concern that what we say here might develop into a handbook for larceny, I might well not have dissented. Manifestly, I do not disagree with my colleagues in their thesis that the time during which the successor to a thief profits at the expense of the victim of the thief is tolled for statute of limitation purposes until the owner knows (or should reasonably be expected to know) of his cause of action and the defendant or defendants. We have determined, as a matter of policy in New Jersey, that whether we are considering adverse possession or the bar of a statute of limitations, one with the color of title, whether it be to a parcel of realty or a cause of action for negligence, for instance, should not have that right defeated until a sufficient time after he or she knows, actually or constructively, of the existence of the right and the reasons for which it might be asserted against the defendant he or she has chosen. With respect to realty this knowledge has been framed traditionally in terms of adverse possession and depends, among other things, on the notoriety and visibility of adverse claim. Mannillo v. Gorski, 54 N.J. 378 (1969). With respect to negligence, statutes of limitation are implicated and we have postulated this knowledge in terms of the "discovery rule" as framing a time of the accrual of a cause of action. *97 Lopez v. Swyer, 115 N.J. Super. 237 (App.Div. 1971), aff'd 62 N.J. 267 (1973).
The policy in either case clearly is to limit the abridgement of claims on the reasonable, equitable, just and fair ground that a person ought not be deprived of a lawful claim, to the benefit of less lawful actors, until  as I observed above  he or she has actual or constructive knowledge of the existence of the right and the reasons for which it might be asserted against the defendant he or she has chosen.
In sum: bound as I am by Redmond, I would hold that the period of adverse possession with respect to chattels should not be less than that afforded real property. For the reasons given by the majority, with which I am in complete agreement in this respect, I would further hold that in any event, adverse possession will not prevail against plaintiff in the circumstances of this case. Finally, I would apply the so-called "discovery rule" of Lopez v. Swyer, supra, with regard to the defensive bar of limitations and remand it to the trial judge for plenary hearing, followed by findings of fact and conclusions of law, in which "the equitable claims of opposing parties must be identified, evaluated and weighed," (62 N.J. at 274) and a decision predicated upon the Lopez v. Swyer guidelines reached.
NOTES
[1] An affidavit by one Lloyd Goodrich, made after entry of the summary judgment appealed from, suggesting that the three paintings were listed as stolen as of 1946 in a stolen painting list, was improperly included as part of appellant's appendix and does not figure in this opinion. Bridgewater Tp. v. Yarnell, 64 N.J. 211, 215 (1974).
[2] Nothing in this portion of the record supplied us discloses where he lived during this period.
[3] Although defendant has not cross-appealed this ruling, we nonetheless have elected to consider it because of our views, hereafter expressed, of the necessary relationship between the defense of adverse possession and the statute of limitations.
[4] Although Redmond could have rested on the ground that the Society's possession of the painting was by bailment and, consequently, the claim for possession did not accrue until the Society refused to relinquish possession on request, it did not do so at least by our reading it. Redmond's express acceptance of the principles of adverse possession clearly exposes the basis for decision. Moreover, the fact that the decision was not based upon the claim having been asserted less than a year after the Society's refusal to surrender the painting reinforces our reading of the case that with respect to claims of property, real or personal, the defenses of adverse possession and limitation are one and the same.
[1] N.J.S.A. 2A:14-2:

Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.
[2] An interesting variation on the theme is to be found in Lieber v. Mohawk Arms, Inc., 64 Misc.2d 206, 314 N.Y.S.2d 510 (Sup.Ct. 1970), where the "owner," who apparently had himself stolen the chattels from Adolph Hitler, was awarded recovery from a bona fide purchaser who had purchased from a thief. As against defendant's charge there that plaintiff was himself a thief the court buttressed its determination by reference to a statutory enactment of Louisiana transferring title to a possessor after ten years of uninterrupted possession. New Jersey, of course, has no such statute.